23 N.J. Super. 103 (1952)
92 A.2d 630
LEOLA ARRINGTON, PETITIONER-RESPONDENT,
v.
BENJAMIN GOLDSTEIN, M.D., AND ANOTHER, RESPONDENTS-APPELLANTS.
Superior Court of New Jersey, Appellate Division.
Argued October 20, 1952.
Decided November 17, 1952.
*104 Before Judges McGEEHAN, BIGELOW and SMALLEY.
Mr. Stanley Cohen argued the cause for the respondent (Messrs. Frankel and Frankel, attorneys; Mr. Abraham Frankel, of counsel).
Mr. Isidor Kalisch argued the cause for the appellants (Mr. Edward E. Kuebler, attorney).
The opinion of the court was delivered by BIGELOW, J.A.D.
The sole question is whether the accident in which Mrs. Arrington, the respondent, was injured, arose out of and in the course of her employment so as to entitle her to compensation under the Workmen's Compensation Law.
Respondent was employed in the Santander, an apartment hotel in Asbury Park. She lived some distance away and went daily to work by bus. On November 25, 1950 there was a terrible storm that caused much damage in Asbury Park and elsewhere in the State. The wind reached 80 miles an hour. Hoping the storm would moderate, Mrs. Arrington delayed starting for work until 10:30. She testified that when she alighted from the bus and made her way toward the Santander, which stands back 25 feet or so from the sidewalk, she reached a point about four feet from the entrance. This was well within the bounds of the Santander premises.
"And then what happened? * * * There's a rod standing there. A rod that  oh, an iron or something. I caught on that and held *105 on to that. When I turned loose and started to walk in the steps the wind came from all directions around and pushed me back and I tried to pull back and I couldn't and I fell and I fell. I rolled over. I don't know how many times. * * *
And do you know approximately how far you were rolled by the wind? About half ways from the steps to the place out as you go toward the 
Toward the curb? Yes.
Did anybody help you? There were two men. I began to scream and two men came. * * * They took me up and take me into the building."
On cross-examination:
"But you finally came to rest, where these men picked you up, on the grounds of the Santander Apartments? That's right. * * *
Now, as a matter of fact, weren't you picked up by the men in the public street near the grass spot? I was not."
To explain the last question, we note that there is a strip of grass along the centre of the street, separating the traffic lanes.
The appellant produced as a witness a Mrs. Moore, who lived in the apartment hotel and happened to look out the window.
"Did you see anything with relation to the Petitioner in this case? I saw two men carrying Leola into the building.
Where were the men when you first saw them carrying the Petitioner into the building with relation to the front of the building? They were coming across the street, across the grass, I should say, that separates the east and west traffic. * * * I saw them carrying her across and coming across into the building. So I went downstairs to see if I could be of assistance."
Appellant put in evidence the hospital record which states, "Patient while going to work  wind blew her across the street  patient fell on curb * * *."
The appellant argues from the evidence recited that respondent should have been awarded no compensation because (1) the accident did not occur at her place of employment but in the public highway; and (2) the accident was the result of the forces of nature and the hazard to which *106 respondent was subjected was a common hazard, and that her risk of injury was no greater than that run by every one, out doors, in the locality.
Counsel urges that Mrs. Moore's testimony shows that respondent never reached the apartment house premises and that her own version of the accident should be rejected. While the deputy director accepted as true Mrs. Moore's narrative, he also accepted respondent's testimony that she had actually reached the railing at the entrance before she was carried off by the wind. And he added, "I believe that this Petitioner was so definitely shocked as a result of this harrowing experience that she doesn't know at this time where, in fact, she was actually dropped by the windstorm * * *."
The deputy director also found as a fact that the respondent ran a greater hazard than was incurred by the public generally. During the storm that morning, she walked safely from her lodgings on Mattison Avenue, to Cookman Avenue and Main Street, where she boarded the bus. She safely alighted from the bus and made her way  perhaps 40 feet or more  to the apartment house entrance, and only there did the wind overpower her. The proofs show that the wind blew from the southeast, that is, from the ocean, and that the Santander is not far from the ocean. The building is nine or ten stories high. Common experience teaches that the wind blows with strange eddies and with more force around a high building than where it is unobstructed. The deputy director's finding that the entrance to the apartment house was a place of peculiar danger, is supported by the evidence. The material facts found by the County Court judge agree substantially with those found by the deputy director.
The concurrent factual findings of the deputy director and the County Court must be given great weight by us. Morgan v. Letwenske, 6 N.J. Super. 67 (App. Div. 1949); Lilly v. Todd, 15 N.J. Super. 1 (App. Div. 1951). No sufficient reason is presented for disturbing the findings *107 in the present case. The conclusion follows that the appellant is liable. For the applicable substantive law, see Cossari v. L. Stein & Co., 1 N.J. Super. 39 (App. Div. 1948) and Mixon v. Kalman, 133 N.J.L. 113 (E. & A. 1945). An annotation on accidents due to the elements may be found in 83 A.L.R. 234.
The judgment is affirmed.