PIGFORD BROS. CONSTRUCTION Co., et al. *v.* EVANS, et al.

No. 39766        November 28, 1955        83 So. 2d 622

412

*Vardaman S. Dunn,* Jackson, for appellants.

414

*John B. Gee,* Vicksburg; *W. Arlington Jones,* Hatties-burg, for appellees.

ETHRIDGE, J.

These workmen's compensation claims arise out of the death of an employee incurred during the 1953 Vicksburg tornado. The attorney-referee, the commission, and the circuit court held that the injury arose out of the employment. That also is our conclusion. Appellants are the employer of E. C. Evans, the deceased employee, and its compensation insurance carrier. Appellees are the alleged widow and three dependents claiming as the children and stepchild of Evans. Appellee Bessie Lee Hackett has cross-appealed from the denial by the circuit court of compensation to her as a "stepchild".

E. C. Evans was the employee of Pigford Brothers Construction Company, which was constructing at Vicksburg a concrete flood wall adjacent to the Yazoo Channel. Evans worked on a large machine called a dragline. His job as oiler was to oil the dragline for use on the project and to render assistance to the operator of the machine. On December 5, 1953, the construction crew of 10 to 18 men was pouring the first six feet of a concrete flood wall. The forms were in place, and the dragline was being used to unload the cement. A misting rain had begun, and Evans, as the dragline oiler, had the duty to place and keep a tarpaulin over the brake drums of this machine, in order to keep them dry and to prevent slipping. The brake drums were located on the dragline approximately six feet above the ground level. The dragline was situated between the flood-wall under construction and the edge of the water on the east side of the Yazoo Channel. About four to five feet east of the new wall then under construction was the old "seawall", a concrete structure approximately 12 feet in height. About 20 yards east of the old "seawall" was the property of Anderson-Tully Company, a sawmill plant. A short dis-

tance below the Yazoo Channel flows the Mississippi River. The channel is about 50 yards in width. Between the dragline and the Yazoo Channel and on southwesterly along the path of an approaching storm there were not any structures or other objects except willow trees growing upon an island between the river and the channel.

The dragline was situated upon a level embankment about 12 to 14 feet in width, and 25 feet above the level of the water. So the dragline, 6 feet in height, was being operated on top of this 25 foot high embankment.

A short time before the storm struck that vicinity, a rainfall had passed over the city, and between that time and that of the storm there was an intermittent rainfall. Evans' duties required him to climb upon the dragline to place and keep the tarpaulin over the brake drums. Immediately before he was killed he had climbed upon the dragline and put the tarpaulin back over the brake drums. This was one of his usual and customary duties, and he was then in and about his employer's business and performing those duties. At about 5:32 p.m., December 5, 1953, a tornado struck the Vicksburg area. It picked up a boat rudder from some point away from the premises on which Evans was employed, and cast it against his body on top of the dragline with such force as to sever his head and cause his immediate death.

The estimated wind velocity was about 200 miles per hour. Vicksburg had never been considered a storm area, and this wind was of unusual proportions for that vicinity. The width of the tornado ranged from 50 yards to about three-fourths of a mile. The tornado began its damage in this area about three miles southwest of the dragline's location, and travelled in a northeasterly direction from the State of Louisiana across the Mississippi River, a small wooded island in the river, and the Yazoo Channel, and struck the east bank of the channel upon which was situated this dragline. It, apparently, was the first object other than the woods and water which

was struck by the tornado in this area. For five minutes the tornado passed through a large business and residential area in the City of Vicksburg. It killed 37 and injured 385 people. It destroyed many buildings.

■■ *First.* Clearly Evans' death occurred while he was in the course of his employment, performing the necessary and usual duties of his job. We think also that his injury arose out of his employment. All of the courts agree that injury due to windstorm, as well as to lightning, earthquake, freezing, sunstroke and exposure to contagious diseases, arises out of the employment if the employment increases the risk of this kind of harm. 1 Larson, Workmen's Compensation Law (1952) Sec. 8.20. ■■ In other words, if an employee, by reason of his duties, is exposed to a special or peculiar danger from the elements, which increases the risk of injury and is within the sphere of the employment, such injury arises out of the employment. 58 Am. Jur.; Workmen's Compensation, Sec. 260; 6 Schneider, Workmen's Compensation Text (1948) Sec. 1552, pp. 78-89; Malone, Louisiana Workmen's Compensation Law and Practice (1951) Sec. 193; Horovitz, Workmen's Compensation Law, (1944) pp. 99-107; Annotations in 13 A.L.R. 974, 25 A. L. R. 146, 40 A. L. R. 400, 46 A. L. R. 1218, 83 A. L. R. 234.

At the time Evans was killed he was performing the necessary duties of his job. The dragline was upon an embankment 25 feet above the water. This machine was 6 feet high. It had been raining, and in order to keep the brake drums dry and prevent slipping, Evans' job required him to place himself in this exposed and elevated position, with his head more than 31 feet above the water level. When the tornado came, the wind picked up a boat's rudder apparently lying somewhere in the vicinity of the river's waterfront. The rudder killed him while he was in this unusually exposed position. Clearly Evans' employment increased the risk of this kind of

harm to him. Accordingly, under the universal rule his job was a contributing factor to his injury and death. They were connected in fact with his employment. Hence death arose out of his employment. ■■ ■ The test is connection in fact with the employment, not whether it is foreseeable in advance, or apparently only in retrospect.

Since this accident manifestly comes within the universally recognized increased risk test, we do not need to consider at this time the other criteria which have been used by the courts in deciding compensation cases involving "acts of God" and exposure to the elements, such as the actual risk doctrine, the positional risk test, and the contact-with-the-premises-exception, which are discussed so lucidly in Mr. Larson's textbook, supra, Sections 6 through 8.

Appellants claim that the position of the employee was no different from that of the general public and was common to the neighborhood, so no causal relationship exists. However, Evans' job placed him in a position of increased risk. Moreover, whether the risk is common to others in the vicinity is of little if any value in determining whether in fact the injury is connected with the employment.

No purpose would be solved by an extensive discussion of the many workmen's compensation cases dealing with employee injuries from windstorms. Some of them applying principles which are pertinent to this case are: American Shipbuilding Company v. Michalski, 30 Ohio App. 80, 164 N. E. 123 (1928); Reid v. Automatic Electric Washer Company, 179 N. W. 323 (Iowa 1920); Industrial Commission of Ohio v. Hampton, 123 Ohio St. 500, 176 N. E. 74 (1931); Maryland Casualty Co. v. Lilly, 62 Ga. App. 806, 10 S. E. 2d 110 (1940); Arrington v. Goldsmith, 23 N. J. Super. 103, 92 A. 2d 630 (1952); Indrisano's Case, 307 Mass. 526, 30 N. E. 2d 538 (1940); Central Ill. Service Co. v. Industrial Commission, 291

Ill. 256, 126 N. E. 144, 13 A. L. R. 967 (1920); Merrill v.
Penasco Lbr. Co., 27 N. Mex. 632, 204 P. 72 (1922); Scott
School Board v. Carter, 156 Va. 812, 159 S. E. 115, 83
A. L. R. 229 (1931); Globe Indemnity Company v. Mack-
endree, 39 Ga. App. 58, 146 S. E. 46 (1928), affirmed in
169 Ga. 510, 150 S. E. 849 (1929); cf. Caswell's Case,
305 Mass. 500, 26 N. E. 2d 328 (1940). For general dis-
cussions of so-called neutral risks arising from wind-
storms and other "acts of God" see Larson, Workmen's
Compensation in Mississippi, The First Five Years, 25
Miss. L. J. 109, 119-122 (1954); 3 N.A.C.C.A. Law Journal
43-52; 4 N.A.C.C.A. Law Journal 91-99; 12 N.A.C.C.A.
Law Journal 75.

*Second.* Is appellee Willie Alice Evans entitled on
this record to compensation benefits as the widow of
E. C. Evans? The attorney-referee and commission de-
nied them, but the circuit court reversed in that respect
and made an award to Willie Alice. We think the circuit
court was correct. On December 29, 1930, Evans married
Lula Mae Whitten in a ceremonial marriage. They lived
together in Lambert, Quitman County, Mississippi, for
six years, until 1936, at which time they were separated.
After their separation Lula Mae moved to Panola County,
and in 1938 she started living with I. T. Armstead. She
was living with him at the time of the trial. They had
six children, and in 1951 she and Armstead obtained a
marriage license and had a ceremonial marriage.

After the separation in 1936, E. C. Evans moved to
Hattiesburg, in Forrest County, Mississippi, where he
lived with his mother until he moved to Vicksburg in
1953. On February 21, 1953, Evans entered into a cere-
monial marriage with appellee, Willie Alice Hackett,
the claimant. Willie Alice had not been married before.

Following this marriage Evans and Willie Alice lived
together in Vicksburg as husband and wife until his
death on December 5, 1953, about nine months. They
occupied a home in Vicksburg, and on October 29, 1953,

a child was born to them, appellee Alice Ruth Evans. She, an illegitimate child of Willie Alice's, and an acknowledged illegitimate child of Evans' lived with Willie Alice and E. C. during this period and before his death. All of them were dependent upon E. C. Evans, and he supported them.

In Anderson-Tully Co. v. Wilson, 221 Miss. 656, 74 So. 2d 735 (1954), this Court in a workmen's compensation case followed a long line of decisions on related issues and held that a strong presumption of validity operates in favor of a second marriage, and that the party attacking the validity of such marriage has the burden of proving its invalidity, even though it involves the proving of a negative. Even where a valid prior marriage is shown, it may be presumed in favor of the second marriage that the first marriage has been dissolved, either by divorce or death of the former spouse, "so as to cast the burden of adducing evidence to the contrary on the party attacking the second marriage, even though he is thereby required to prove a negative".

In this case the only evidence offered by appellants to rebut this strong presumption of validity of a second marriage was the testimony of Evans' first wife, Lula Mae. She said she had not divorced Evans, and he had not divorced her. She claimed no compensation. This evidence was not sufficient to rebut the presumption of validity of Evans' marriage to Willie Alice. As stated in numerous cases and in Amis, Divorce and Separation in Mississippi (1935) Sec. 54, such an admission does not adequately prove whether a divorce has been granted to the other party, Evans. The practical course of proof in such a case would be to show where each party to the prior marriage had resided up to the time of the second marriage, and then to procure from the clerk of the proper court in each such county a certificate of search showing that no divorce or annulment had been granted by the court of which he is clerk. See Pigford

v. Ladner, 147 Miss. 822, 112 So. 785 (1927). This required that appellants offer such documentary proof from Quitman, Panola and Forrest Counties. Code of 1942, Secs. 2738, 1852. Appellants failed to meet this burden of proof in this case. This rule places a difficult burden of proof upon those contesting a second marriage, but it is based upon a sound public policy and is well established. 2 Larson, Workmen's Compensation Law, Sec. 62.21. Parker v. American Lumber Co., 190 Va. 181, 56 S. E. 2d 214 (1949) is a recent workmen's compensation case involving almost this identical situation, where the only evidence offered by the contestants was the testimony of the first wife of the deceased employee. That case cites several other decisions holding to the same effect. One of them, Pettinger v. Pettinger, 28 Colo. 308, 64 P. 195 (1901), was cited with approval in the first reported opinion in Pigford v. Ladner, 138 Miss. 461, 469, 103 So. 218 (1925). So on this record appellee Willie Alice Evans is the lawful widow of the employee, is entitled to compensation benefits, and the circuit court is affirmed in that respect.

*Third.* Bessie Lee Hackett, appellee and cross-appellant, is the illegitimate child of Willie Alice Evans, and was born on May 18, 1947. Under the conclusions stated above, her mother is the lawful widow of the deceased employee. The question is whether Bessie Lee can be considered a stepchild of E. C. Evans within the meaning of the statute. After her mother and Evans married, she lived in the houshold with them, he supported her, and she was dependent upon him. The attorney-referee allowed Bessie Lee compensation as a dependent stepchild. The commission and the circuit court held against her.

Code Section 6998-02 (12) provides: " 'Child' shall include a posthumous child, a child legally adopted prior to the injury of the employee, a child in relation to whom the deceased employee stood in the place of a parent

for at least one year prior to the time of injury, *and a stepchild* or acknowledged illegitimate child dependent upon the deceased, . . ." The general definition of step-child is the child by a former marriage of either the husband or the wife. 82 C. J. S. 1066-67. However, there is a difference of opinion among the courts interpreting workmen's compensation acts as to whether an illegiti-mate child becomes a stepchild of the husband of his or her mother. New York, Minnesota, and West Virginia hold that he does. Larsen v. Harris Structural Steel Company, 243 N. Y. Supp. 654, 230 App. Div. 280 (1930); Lunceford v. Fegels Construction Company, 185 Minn. 31, 239 N. W. 673 (1931); Simpson v. State Compensation Commissioner, 114 W. Va. 814, 174 S. E. 329 (1934). Three states deny the existence of a stepchild relation-ship, although they all base their decisions upon the peculiar limiting terms of the state's statute. In re Marshall, 117 Indiana App. 203, 70 N. E. 2d 772 (1947); Dangrefield v. Indemnity Insurance Company, 19 So. 2d 598 (La. 1944), affirmed in 209 La. 195, 24 So. 2d 375 (1945); Sharp v. Borough of Vineland, 117 N. J. L. 598, 190 Atl. 44 (1937). See 40 Words and Phrases 143-144; 71 C. J., Workmen's Compensation, Sec. 293, p. 542; 58 Am. Jur., Workmen's Compensation, Sec. 179.

It should be noted that the terminology in the New York statute, under which compensation is awarded, is almost identical with that of the Mississippi statute. See Lunceford v. Fegels Construction Company, 239 N. W. at p. 674.

■■ ■ We think that the reasoning in the Larsen, Simpson and Lunceford cases answering this issue in the affirmative is sound and more consistent with the terms of the Mississippi statute and the legislative intent. The child lived in the Evans' home with her mother and Evans as a member of the family, and was supported by him and wholly dependent upon him. The relationship to him arose by the marriage of her mother, who owed

Bessie Lee the same obligation of support and care as if she had been born in wedlock. Illinois C. R. R. Co. v. Sanders, 104 Miss. 257, 61 So. 309 (1913); 7 Am. Jur., Bastards, Sec. 71. If either the mother or child had died the survivor would have inherited unbequeathed property. Code of 1942, Sec. 474. And when Evans married the mother, and the child was recognized by him as his wife's child and was supported by him, and wholly dependent upon him, we think that she was his stepchild within the meaning of Code Section 6998-02 (12). Cf. Pathfinder Coach Div. of Superior Coach Corp. v. Cottrell, 216 Miss. 358, 60 So. 2d 383 (1953).

For these reasons the circuit court was in error in denying compensation benefits to appellee and cross-appellant Bessie Lee Hackett, and is reversed in that respect and judgment rendered for this cross-appellant.

■ ■ *Fourth.* Appellees Willie Alice Evans, Alice Ruth Evans, and Bessie Lee Hackett have filed a motion for allowance of attorney's fee in the amount of forty percent of the amount recovered for Willie Alice Evans, and of thirty-three and one-third percent of the recovery for Alice Ruth Evans and Bessie Lee Hackett. We have previously held that in compensation cases an attorney's fee will not be allowed in excess of one-third for all services rendered, including those before the attorney-referee, commission, circuit court and this Court. W. G. Avery Body Co. v. Hall, 80 So. 2d 53 (Miss. 1955). For that reason this motion is sustained in part and over-ruled in part, and an attorney's fee is allowed for these three appellees in the amount of thirty-three and one-third percent of the amount recovered for each of them, as full compensation for all services rendered.

Dorothy Jane Evans has filed a motion for allowance of attorney's fee in the amount of one-third of the sum recovered for this child. That motion is sustained, as full compensation for all services rendered to her.

The judgment of the circuit court is affirmed insofar as it awarded compensation to Willie Alice Evans, Alice Ruth Evans and Dorothy Jane Evans; its judgment is reversed insofar as it denied benefits to Bessie Lee Hackett, and judgment is rendered here awarding benefits under the compensation act to Bessie Lee Hackett.

Affirmed in part, reversed in part, judgment rendered, and cause remanded.

All Justices concur, except *Roberds, J.,* who took no part.