Ottis YARBROUGH, on behalf of herself and as Mother and Next Friend of Jesse Ray Holder, a minor, Plaintiff,

v.

Anthony J. CELEBREZZE, Secretary of Health, Education, and Welfare of the United States of America, Defendant.

No. C–134–R–62.

United States District Court
M. D. North Carolina,
Rockingham Division.

May 22, 1963.

**944**

Harvey C. Carroll and Leath, Blount & Hinson, Rockingham, N. C., for plaintiff.

William H. Murdock, U. S. Atty., and Roy G. Hall, Jr., Asst. U. S. Atty., Greensboro, N. C., for defendant.

EDWIN M. STANLEY, Chief Judge.

The plaintiff seeks judicial review, pursuant to the provisions of 42 U.S.C.A. § 405(g), of the final decision of the Secretary of Health, Education, and Welfare, holding that the plaintiff is not the widow of Thomas J. Yarbrough, deceased wage earner, and thus not entitled to survivor's insurance benefits under 42 U.S.C.A. § 402(g) on her own behalf, and that Jesse Ray Holder is not the child of the deceased wage earner, and thus not entitled to child's insurance benefits under 42 U.S.C.A. § 402(d).

Both plaintiff and defendant have moved for summary judgment pursuant to the provisions of Rule 56, Federal Rules of Civil Procedure, 28 U.S.C.A. For the reasons hereinafter stated, it is found that the determination of the Secretary is supported by substantial evidence and that the motion of the defendant for summary judgment should be allowed.

The plaintiff and Thomas J. Yarbrough, hereinafter referred to as "the wage earner," were ceremonially married on July 31, 1943, in Bennettsville, South Carolina, at which time the wage earner was on active duty with the Army of the United States, stationed at Camp Mackall, North Carolina. The wage earner was inducted into service on September 30, 1942, and was discharged on October 21, 1943. After his discharge from the army, the plaintiff and the wage earner moved to Gunnison, Mississippi, where they resided throughout the intervening years until they separated in 1950. Sometime after their separation, the wage earner brought a divorce action against the plaintiff in Bolivar County, Mississippi. On September 13, 1950, the divorce action, as well as a cross-complaint filed by the plaintiff, was dismissed with the consent of each of the parties by reason of an alleged reconciliation. On the same date, September 13, 1950, Billie Ruth Kinkennon obtained an absolute divorce from James Perry Kinkennon. Thereafter, on December 18, 1950, the wage earner entered into a ceremonial marriage with Billie Ruth Kinkennon, hereinafter referred to as "Billie Ruth," in Clarksdale, Mississippi, with whom he lived until the time of his death on March 3, 1956. Two children, Nellie Yarbrough and Thomas J. Yarbrough, Jr., were born to the wage earner and Billie Ruth. Both children were born in the State of Mississippi, on June 24, 1951, and January 1, 1954, respectively. Ruthie Mae Kinkennon, born December 21, 1946, Billie Ruth's child by her former marriage, lived with Billie Ruth and the wage earner during their marriage.

On January 19, 1952, the plaintiff entered into a marriage ceremony with Curtis Holder in Gunnison, Mississippi. Thereafter, on April 30, 1953, Jesse Ray Holder was born in Richmond County, North Carolina. While said child was conceived and born subsequent to her marriage to Curtis Holder, and the birth record indicates that Curtis Holder is the father of the child, the plaintiff nevertheless contends that the wage earner was the child's biological father.

The wage earner died fully insured on March 3, 1956, domiciled in the State

of Mississippi. On March 9, 1956, Billie Ruth filed an application with the Bureau of Old-Age and Survivor's Insurance for mother's insurance benefits on her own behalf, and on behalf of Ruthie Mae Kinkennon, Nellie Yarbrough, and Thomas J. Yarbrough, Jr., for children's insurance benefits, based on the wage earner's account. The Bureau determined that Billie Ruth was entitled to mother's insurance benefits, and that Ruthie, Nellie, and Thomas, Jr., were entitled to children's insurance benefits, effective March, 1956. Information subsequently received by the Bureau indicated that a previous marriage of the wage earner had not been legally dissolved before he married Billie Ruth, resulting in benefits to Billie Ruth and her children being suspended in August, 1956. Based on additional developments, it was determined by the Bureau that the marriage of the wage earner to Billie Ruth was void and bigamous, and benefit payments to the beneficiaries were terminated. On September 26, 1957, Billie Ruth filed a request for a hearing before a hearing examiner of the Social Security Administration. On May 14, 1958, the Hearing Examiner, Garland E. Taylor, issued his decision, finding that the marriage of the wage earner and Billie Ruth was a valid marriage and that Billie Ruth and her three minor children were entitled to the insurance benefits claimed.

On July 19, 1958, the plaintiff filed an application with the Bureau for mother's insurance benefits on her own behalf and on behalf of Jesse Ray Holder for child's insurance benefits, based on the wage earner's account. The Bureau determined that a valid marriage did not exist between the plaintiff and the wage earner when he died, and that the plaintiff and the wage earner were not validly married at the time Jesse Ray Holder was conceived. It was concluded, therefore, that plaintiff and her child did not meet the required relationship to the wage earner to establish an entitlement to benefits. On reconsideration, the Bureau affirmed its prior determination. The plaintiff thereafter filed a request for a hearing before a hearing examiner. On February 15, 1960, the Hearing Examiner, Ben D. Worcester, issued his decision in which he found that the marriage between the plaintiff and the wage earner continued until the death of the wage earner; that the child, Jesse Ray Holder, was born during wedlock; that the plaintiff was entitled to child's insurance benefits on behalf of her minor child; and, by inference, that the plaintiff was entitled to mother's insurance benefits. Since the recommended decision of Hearing Examiner Worcester was in conflict with the earlier decision of Hearing Examiner Taylor, the case was certified to the Appeals Council for final decision, pursuant to the regulations of the Social Security Administration. On February 23, 1960, Billie Ruth filed a request for review by the Appeals Council of the decision of Hearing Examiner Worcester.

The Appeals Council, on May 7, 1962, rendered its decision, holding that, on the basis of the entire record, the plaintiff was not entitled to survivor's insurance benefits on her own behalf, or on behalf of her child, Jesse R. Holder, and that Billie Ruth was entitled to mother's insurance benefits from March, 1956, to November, 1956, the month before the month in which she remarried, and that Ruthie Kinkennon and Nellie and Thomas Yarbrough, Jr., were entitled to children's benefits, beginning with March, 1956. This action followed.

 Under the jurisdictional statute, 42 U.S.C.A. § 405(g), the findings of the Secretary, if supported by substantial evidence, are conclusive, and such conclusiveness extends to inference drawn from the evidence. Underwood v. Ribicoff, 4 Cir., 298 F.2d 850 (1962); Bradey v. Ribicoff, 4 Cir., 298 F.2d 855 (1962); Allison v. Ribicoff, 4 Cir., 307 F.2d 379 (1962), and Adams v. Flemming, 2 Cir., 276 F.2d 901 (1960). Substantial evidence means "enough [evidence] to justify, if the trial were to a jury, a refusal to direct a verdict when

the conclusion sought to be drawn from it is one of fact for the jury." National Labor Relations Board v. Columbian Enameling & Stamping Co., 306 U.S. 292, 59 S.Ct. 501, 83 L.Ed. 660 (1939). The burden of proof, both before the Secretary and in this Court, is upon the plaintiff to establish her claim by a preponderance of the evidence. Adams v. Flemming, Supra; Roberts v. Flemming, 186 F.Supp. 426 (N.D.Ala., 1960). We are not authorized in a proceeding such as this to substitute our own judgment for that of the Secretary, and his determination may not be set aside if there is any legal basis therefor, "even though upon a consideration of all the evidence this Court might have reached a different conclusion." Thurston v. Hobby, 133 F.Supp. 205 (W.D.Mo., 1955); Julian v. Folsom, 160 F.Supp. 747 (S.D.N.Y., 1958).

■ In view of the foregoing firmly established legal principles, the question for determination is whether the findings of the Secretary are supported by substantial evidence. In making this determination, it is necessary to keep in mind that, consistent with the provisions of 42 U.S.C.A. § 416(h) (1), the law of the State of Mississippi, the State where the wage earner died domiciled, must be applied in determining the relationship of the plaintiff and her child to the wage earner at the time of his death.

■ Under the law of Mississippi, where two marriages are shown, there is an unusually strong presumption in favor of the second marriage. The party attacking the validity of such marriage has the burden of proving its invalidity, even though to do so a negative must be proved. In Anderson-Tully Co. v. Wilson, 74 So.2d 735, 76 So.2d 515 (1954), the Supreme Court of Mississippi said:

"Of course this presumption can be rebutted by evidence excluding the possibility of a divorce or death of a prior spouse, 14 A.L.R.2d 45, but that burden of proof is a difficult one: 'It has been declared that, an existing marriage being shown, the presumption of its validity is so strong that proof of a former subsisting marriage, in order to overcome this presumption, must be so cogent and conclusive as to fairly preclude any other result.' "

In Pigford Brothers Const. Co. v. Evans, 225 Miss. 411, 83 So.2d 622 (1955), the same Court stated:

"In Anderson-Tully Co. v. Wilson, 1954, 221 Miss. 656, 74 So.2d 735, 737. [76 So.2d 515], this Court in a workmen's compensation case followed a long line of decisions on related issues and held that a strong presumption of validity operates in favor of a second marriage, and that the party attacking the validity of such marriage has the burden of proving its invalidity, even though it involves the proving of a negative. Even where a valid prior marriage is shown, it may be presumed in favor of the second marriage that the first marriage has been dissolved, either by divorce or death of the former spouse, ' "so as to cast the burden of adducing evidence to the contrary on the party attacking the second marriage, even though he is thereby required to prove a negative." ' "

■ The evidence establishes beyond question that the wage earner participated in two ceremonial marriages, one on July 31, 1943, with the plaintiff, and the other on December 18, 1950, with Billie Ruth. Our inquiry then is whether the plaintiff has discharged her burden of showing, with evidence "so cogent and conclusive as to fairly preclude any other result," that her marriage to the wage earner was still undissolved at the time of his death. Anderson-Tully Co. v. Wilson, Supra.

It is clear from the record that the wage earner, as a pulpwood camp worker, moved about from place to place quite frequently, and that his whereabouts at all times material to this case cannot

be established with any degree of certainty. The many conflicting statements of the plaintiff concerning her relationship with the wage earner tended to confuse rather than clarify. On July 17, 1956, she stated that she and the wage earner separated in 1950, and that he told her that he had divorced her. She denied, however, having ever received notification of such divorce. On August 21, 1956, she stated that she had gone to the home of her mother in Fort Mill, South Carolina, approximately three weeks subsequent to her separation from the wage earner, but that she had returned to Gunnison to contest the divorce proceeding. She further stated that she remained in Gunnison one month before going to Rockingham, North Carolina, where her mother had moved, and that she never again saw the wage earner. Thereafter, on March 27, 1959, plaintiff stated that she and the wage earner were reconciled during the divorce proceedings and they began living together again; that in October, 1950, the wage earner left "for business reasons" and spent the following four months in Arkansas, spending only week ends with the plaintiff; and that in the early part of 1951 she returned to Rockingham, North Carolina, for a while. Plaintiff also stated that she later returned to Gunnison and lived with the wage earner in 1951, and up to November of that year, when she again went to Rockingham for two months. Plaintiff later stated that in January, 1952, at the request of the wage earner, she went to Gunnison, but that when she arrived there the wage earner told her he had married Billie Ruth in 1950, while he was working in Arkansas, and that he had divorced the plaintiff. Before the Hearing Examiner, the plaintiff testified that, after her marriage to Holder, she had searched the records in Arkansas, Tennessee and Mississippi, but found no record of a divorce obtained by the wage earner. She stated that the reason for searching the records in Arkansas and Tennessee was that the wage earner had lived in each of those states while working in pulpwood camps.

The record is a lengthy one and there are numerous other conflicts in the testimony of the various witnesses with respect to the whereabouts and activities of the wage earner throughout the period subsequent to his marriage to the plaintiff and prior to his marriage to Billie Ruth. In view of these many conflicts, the Appeals Council was unable to definitely conclude that court records in all pertinent jurisdictions had been searched, or that the marriage of the wage earner to the plaintiff had not been dissolved by judicial proceedings prior to his marriage to Billie Ruth.

■ After considering the entire record, and the strong presumption in Mississippi in favor of the second marriage, the Court is unable to say that the finding of the Secretary is not supported by substantial evidence. Accordingly, judgment will be entered granting the defendant's motion for summary judgment, affirming the decision of the Secretary, and dismissing the complaint.