Dollie M. McCLURE, as next friend of
Joseph Eugene McClure, a minor,
Appellant,

v.

Burton G. HACKNEY, Commissioner of the
State Department of Public Welfare
et al., Appellees.

No. 11966.

Court of Civil Appeals of Texas,
Austin.

Feb. 14, 1973.

Rehearing Denied Feb. 28, 1973.

Bernard Cohen and Mabel Spellman Barber, Legal Aid Bureau, Dallas, for appellant.

Crawford C. Martin, Atty. Gen., of Texas, Linda Neeley, Asst. Atty. Gen., Austin, for appellees.

SHANNON, Justice.

The issue in this appeal concerns the meaning of the term, "stepmother", as used in Vernon's Tex.Rev.Civ.Stat.Ann. Art. 695c § 17(5), the legislation commonly called, "Aid to Families with Dependent Children".

Appellant, Dollie M. McClure, as next friend of Joseph Eugene McClure, a minor, filed a declaratory judgment suit in the district court of Travis County seeking a construction of Art. 695c, § 17(5) to the effect that Joseph was a "dependent child" and entitled to aid from the Texas State Department of Public Welfare.[1] Both appellant and appellees filed motions for summary judgment, and the district court granted appellees' motion and denied appellant's. We will reverse that judgment and here render judgment for appellant.

Albert and Dollie M. McClure were married in 1945, and have never been divorced. Before 1966, Albert formed an illicit laison with Janella Ruth Wilson, and as a result,

1. Appellees are Burton G. Hackney, Commissioner of The State Department of Public Welfare; Will Bond, Chairman of the State Board of Public Welfare; W. Kendall Baker, Vice Chairman; Louis R. Sarazan, Secretary of The State Board of Public Welfare; Anne C. Cappleman, Hearing Officer; individually and in their official capacities; and the Attorney General for the State of Texas.

Joseph Eugene McClure was born on January 23, 1966. Shortly afterward, Albert acknowledged to Dollie that Joseph was his son, and brought him to live with her. At that time, Albert agreed to support and maintain Joseph and Dollie, but after two weeks, he left them permanently.

Dollie, now totally blind, reared and supported Joseph as her own, but she never formally adopted him. By some character of proceeding, not made clear in the record, she did obtain "temporary custody" of the child by an order of the juvenile court of Dallas County on February 25, 1970.

In July of 1969, Dollie, on behalf of the child, applied for "Aid to Families with Dependent Children" pursuant to Art. 695c, § 17. As a result, she was awarded a grant of $42.00 each month. However, in December of 1969, the grant was withdrawn for the stated reason that Dollie was not the stepmother of the child as required in subsection (5) of that Act.

Art. 695c, § 17, provides for aid to families with "Dependent Children". A "Dependent Child" is one who is needy, under the age of eighteen, or twenty-one if a student, a citizen of the United States and a resident of Texas, and who has been deprived of parental support or care by reason of the death, continued absence from the home, or physical or mental incapacity of a parent.

Subsection (5) of Section 17, provides further that in order for the child to qualify as a "Dependent Child" he must be ". . . living with his father, mother, grandfather, grandmother, brother, sister, stepfather, *stepmother*, stepbrother, stepsister, uncle, aunt, first cousin, nephew, or niece, in a place of residence maintained by one or more of such relatives as his or their own home; and . . ." (emphasis added)

But for the requirement of subsection (5), Joseph would qualify as a "Dependent Child". Appellees claim, and the trial court by entering the summary judgment for appellees must have concluded, that Joseph could not qualify as a "Dependent Child" since Dollie was not his "stepmother" within the meaning of that term in subsection (5).

Appellant asserts that subsection (5), as construed to exclude illegitimate children from assistance, is in violation of the equal protection clauses of the Constitutions of Texas and the United States. In support of this position appellant relies primarily on Levy v. Louisiana, 391 U.S. 68, 88 S.Ct. 1509, 20 L.Ed.2d 436 (1968) and Glona v. American Guarantee Liability Insurance Company, 391 U.S. 73, 88 S.Ct. 1515, 20 L.Ed.2d 441 (1968).

In support of the judgment, appellees argue that a wife may not be the stepmother of a child fathered by her husband outside of wedlock. As authority for this position appellees quote definitions of "stepchild" and "step-mother" found in Black's Law Dictionary. "Step-child" is defined there as, "The child of one of the spouses by a former marriage," while "step-mother" is stated to be, "The wife of one's father by virtue of a marriage subsequent to that of which the person spoken of is the offspring". By the terms of these definitions illegitimate children are not stepchildren and may not claim their father's wife as their stepmother.

As we base our judgment upon the construction of subsection (5), we do not reach the constitutional arguments advanced by appellant.

Though the term, "stepmother", in subsection (5) has not been construed, the term "step-child" with respect to illegitimacy, in other contexts, has.

In Hernandez v. Supreme Forest Woodmen Circle, 80 S.W.2d 346 (Tex.Civ.App. 1935, no writ) the appellant claimed that the named beneficiary of the life insurance policy had no insurable interest in the life of the insured since she was an illegitimate child of the insured's husband and hence

not a step child. By statute, the fraternal insurance company was permitted to pay death benefits to "step-children".

In holding that the illegitimate child of the insured's husband was the insured's stepchild, the San Antonio Court of Civil Appeals said, "The policy seems prevalent everywhere to construe insurance contracts liberally in favor of those intended by the parties to benefit therefrom, and, concretely, to make no invidious discriminations against designated beneficiaries on account of their illegitimacy."

Likewise, in those workmen's compensation statutes in which stepchildren are included as beneficiaries,[2] the term, "stepchild", has been held to include illegitimate children of the widow of the deceased workman. Pigford Brothers Construction Co. v. Evans, 225 Miss. 411, 83 So.2d 622 (1955); Larsen v. Harris Structural Steel Co. Inc., 230 App.Div. 280, 243 N.Y.S. 654 (1930); Lunceford v. Fegles Const. Co., 185 Minn. 31, 239 N.W. 673 (1931); Simpson v. State Compensation Commissioner, 114 W.Va. 814, 174 S.E. 329 (1934).[3]

In Lipham v. State, 125 Ga. 52, 53 S.E. 817 (1906) the Georgia incest statute was construed. That statute proscribed sexual intercourse with a "stepchild". The accused had sexual intercourse with the illegitimate daughter of his wife who was born before his marriage to the child's mother. The court held that the illegitimate child was the stepchild of the accused.

Presumably, those persons related to children, rather than strangers, are those who are most interested in the children's welfare, and will be those most likely to see that assistance funds are spent for the benefit of the children. Most probably, this policy, i. e.: prevention of fraud, underlies the limitation of benefits to those children living with those classes of relatives in subsection (5). An examination of the record indicates that this policy would not be violated by Dollie McClure receiving the assistance for Joseph. There is no suggestion that Joseph was gathered in by Dollie to realize welfare benefits. On the contrary, she took him as an infant and recognized him as her husband's son. After her husband abandoned them, she supported Joseph and has provided him a home and has treated him as her own child.

We reverse the judgment and here render judgment that, for the purposes of this cause, Dollie McClure is the stepmother of Joseph Eugene McClure, and, as such, Joseph Eugene McClure is a "Dependent Child" within the meaning of Art. 695c, § 17(5).

Reversed and rendered.

---

2. Vernon's Tex.Rev.Civ.Stat.Ann. Art. 8306, Sec. 8a, does not provide that stepchildren are beneficiaries.

3. Contra: Dangerfield v. Indemnity Ins. Co., 209 La. 195, 24 So.2d 375 (1945); Sharp v. Borough of Vineland, 117 N.J.L. 598, 190 A. 44 (1937).