387 So.2d 761 (1980)
Victoria SMITH
v.
R.A. WEIR, Jr., et al.
No. 52133.
Supreme Court of Mississippi.
September 10, 1980.
*762 James E. Lambert, William C. Smith, Jr., Taylor, Covington, Smith & Matrick, Jackson, for appellant.
O.B. Triplett, Jr. (Deceased) by Tom S. Lee and O.B. Triplett, III, Forest, for appellees.
Before ROBERTSON, P.J., and WALKER and SUGG, JJ.
WALKER, Justice, for the Court:
This is a suit to partition certain real property situated in Newton County, Mississippi. The complainant Victoria Smith, alleged that her second husband, Grover Smith, owned an undivided one-seventh interest in this property and that this interest passed to her as his wife and only heir when he died intestate in 1968.
The defendants answered, denying that Victoria Smith was entitled to any interest in the lands, and asserting they were the exclusive owners thereof. Their defense rested on a claim that Victoria Smith's marriage to Grover Smith was void ab initio, her first marriage constituting an absolute impediment to her second marriage.
At the hearing before the chancellor the parties made several stipulations to eliminate the need for proof. They stipulated that at one time the 135 acres involved in this suit were owned by Joe Smith; that Joe Smith died intestate leaving a wife and seven children, one of whom was Grover Smith; that Joe Smith's wife died intestate survived by six of her children and one grandson who took the place of the seventh child, so that the property was divided seven ways. Victoria Smith also stipulated that she had never filed for a divorce from her first husband and she had no knowledge of any divorce suit filed against her by her first husband.
The parties agreed that the sole issue before the lower court was whether or not Grover Smith was legally married to Victoria Smith when he died intestate. The chancellor ruled that he was not, and from that ruling Victoria Smith appeals.
The proof developed at the hearing showed that Victoria Smith, using the name Miss Quick Erneston, married one Sim Futch on June 3, 1918, in Scott County, Mississippi. She had two sons by Sim Futch before he left her sometime in 1919. She has never heard from him since then. One of her sons, Ned Futch, who lives in Detroit, Michigan, testified that he is 60 years old and has never met his father or anyone else by the name of Sim Futch.
Fifteen years after Sim Futch left her, Victoria married Grover Smith in Newton County, Mississippi. They resided in Newton County until Grover's death on October 19, 1968. Victoria then moved to Detroit, Michigan, where she has resided ever since.
The defendants' case rested on the testimony of one witness, Mrs. Mittis Bufkin, a sister of Grover Smith. She testified that she had a conversation with a man who stated he was Sim Futch in 1969, just after Hurricane Camille struck the Gulf Coast, and that this man told her Victoria Ernest *763 was his wife. His specific words, as recollected by the witness, were, "That's my wife."[1]
In light of this testimony, which the chancellor termed unequivocal and positive, and also considering the admission by Victoria Smith that she had never obtained a divorce from Sim Futch and had no knowledge that he had obtained a divorce from her, the chancellor held that the defendants had rebutted the presumption that the second marriage was valid. He, therefore, dismissed the bill of complaint. This was error.
Where there is proof of a marriage ceremony, the law will presume the capacity of the parties, consent of the parties, and all essentials to the validity of the marriage. The presumption was early recognized by this Court in Hull v. Rawls, 27 Miss. 471 (1854), and has been consistently applied ever since.
The rule of law was perhaps best stated in Anderson-Tully Co. v. Wilson, 221 Miss. 656, 74 So.2d 735 (1954) as follows:
It is well-established that when a person has entered into several successive marriages, a presumption arises in favor of the validity of the second or last marriage. And this presumption of validity is applicable to a subsequent common-law marriage, as well as to a subsequent ceremonial marriage. Anno., 14 A.L.R.2d 7, 19; 55 C.J.S. Marriage § 43, pp. 887-892, 896. A subsequent marriage in fact raises the presumption that a former marriage has been terminated by divorce or by the death of a prior spouse. These presumptions are based upon public policy. The burden of adducing evidence to the contrary rests on the party who attacks it. 55 C.J.S. [Marriage, § 43,] pp. 890-891. Of course this presumption can be rebutted by evidence excluding the possibility of a divorce or death of a prior spouse, 14 A.L.R.2d 45, but that burden of proof is a difficult one: "It has been declared that, an existing marriage being shown, the presumption of its validity is so strong that proof of a former subsisting marriage, in order to be sufficient to overcome this presumption, must be so cogent and conclusive as to fairly preclude any other result." (221 Miss. at 662, 74 So.2d at 737).
In Pigford Bros. Construction Co. v. Evans, 225 Miss. 411, 83 So.2d 622 (1955), a deceased employee's second wife was entitled to compensation benefits as the lawful widow of the employee. The only evidence offered to rebut the presumption was the testimony of the employee's first wife that she had not divorced him and he had not divorced her. We held this evidence was not sufficient to rebut the presumption of validity of the second marriage because it did not prove that the deceased had not obtained a divorce from his first wife. The Court stated:
The practical course of proof in such a case would be to show where each party to the prior marriage had resided up to the time of the second marriage, and then to procure from the clerk of the proper court in each such county a certificate of search showing that no divorce or annulment had been granted by the court of which he is clerk. (225 Miss. at 421, 83 So.2d at 625).
*764 In Ramphrey v. Ramphrey, 243 Miss. 184, 137 So.2d 906 (1962), a husband attempted to set aside the divorce decree granted to his wife. He alleged that at the time of their marriage his wife was still married to a former husband, and as proof he submitted a divorce decree obtained by his wife from her first husband after her marriage to her second husband. This was not enough. It was incumbent on the petitioner to show that the first husband had not obtained a divorce prior to the subsequent marriage.
The case of Erwin v. Hodge, 317 So.2d 55 (Miss. 1975) most strongly illustrates the proof necessary to overcome the presumption. In that case Henry Erwin married Alice Newberry in 1941 in Lincoln County. He obtained a divorce in 1945, but remarried her in 1947. Later that same year he married Helen Scott in Lincoln County. In 1958 Helen Scott obtained a divorce from Erwin in Adams County. They also remarried in 1958, but divorced in 1959. In 1961 Erwin married Linnie Smith. He died intestate in 1971, in Jefferson County, while living with Linnie Smith Erwin. The proof showed that Henry Erwin was a lifelong resident of Jefferson County. Alice Newberry, his first wife, moved to Hinds County, then to Warren County, following her separation from Erwin. In an attempt to rebut the presumption of the validity of Erwin's subsequent marriages, certificates were introduced from the chancery clerk of Adams, Hinds, Jefferson, Lincoln and Pike Counties, certifying that no record of divorce or an annulment had been granted to Henry Erwin or Alice Newberry Erwin between August 7, 1947, the date of their remarriage, and the date of Erwin's death. This proof failed, in part because there was no showing whether there had been a divorce in Warren County.
The proof offered in this case to rebut the presumption that Victoria Smith's marriage to Grover Smith was valid does not preclude the possibility that Sim Futch had obtained a divorce from Victoria or had died prior to Victoria's second marriage. Mittis Bufkin's testimony that she once met a man who claimed to be Sim Futch and who claimed to be married to Victoria Ernest was only hearsay. Even though there was no objection to this testimony it was entitled to little, if any, weight. Further, the stipulation that Victoria Smith had never divorced Sim Futch and that she had no knowledge of any divorce obtained by Sim Futch does not preclude the possibility that Sim Futch had in fact obtained a divorce from her. The burden of producing evidence to rebut the presumption of validity attaching to Victoria and Grover Smith's ceremonial marriage rested on the parties attacking it, and that burden could only be met by producing proof so cogent and conclusive as to fairly preclude any other result. The proof in this case clearly falls short of that required.
Since it is evident that the chancellor erred, the cause should be reversed and remanded for proceedings on the bill of complaint for partition.
REVERSED AND REMANDED.
PATTERSON, C.J., SMITH and ROBERTSON, P. JJ., and SUGG, BROOM, and COFER, JJ., concur.
LEE and BOWLING, JJ., took no part.
NOTES
[1] Mrs. Bufkin testified that she and some friends drove to the Gulf Coast to view the damage done by Hurricane Camille. While travelling toward Biloxi off Highway 49, going into Back Bay, they stopped at a filling-station to have a flat fixed. An old black man identified himself as Sim Futch. He had seen the Scott County license plate and started a conversation with Mrs. Bufkin about different people in Scott County. He asked if she knew any Futches. She replied, "Yes." He asked if she knew any Ernests, and she said she knew some. He asked her about Victoria Ernest (Victoria Smith's maiden name). He said that was his wife. Mrs. Bufkin told him that the Victoria she knew was married to another man. He again told her Victoria was his wife and that he would look her up someday. Mrs. Bufkin just laughed.

On cross-examination Mrs. Bufkin did not know the name of the filling-station, what highway it was on, or what county it was in. She described the man who claimed to be Sim Futch as gray-haired, brown-skinned, and of medium height. She had not seen him before or since, and there is no evidence that anyone else has seen him, either.