IRVING, J„
for the Court:
¶ 1. After Louis Wallace, as administrator of Cynthia Gilkey Wallace’s (Gilkey) estate, filed a wrongful-death lawsuit against Dr. Emad H. Mohamed, Dr. Mohamed intervened in the estate-administration suit in the Lowndes County Chancery Court. Evidence was presented which suggested that Wallace may not have been Gilkey’s legitimate spouse, due to Gilkey’s prior marriage to Keith Magee.[1] Thereafter, the chancery court removed Wallace as administrator and appointed the chancery court clerk in his place. Feeling aggrieved, Wallace appeals and asserts that: (1) Dr. Mohamed did not have standing to intervene in the administration of the estate, and (2) Wallace was improperly removed as administrator of the estate.
¶ 2. We agree that Dr. Mohamed did not have standing to intervene in the administration of the estate. Furthermore, we find that, even if Dr. Mohamed had standing to intervene, Wallace should not have been removed as administrator. We also find that there is insufficient evidence to support the chancery court’s implicit finding that Wallace was not Gilkey’s legitimate spouse. Therefore, we reverse and render the judgment of the chancery court. We also remand to the chancery court for reinstatement of Wallace as administrator of Gilkey’s estate.
FACTS
¶ 3. Gilkey was the mother of two children — J’Bria Gilkey, born on October 19, 1983, and Christopher Wallace, born on April 28, 1993. The evidence at trial indicates that Christopher is accepted to be the child of Gilkey and Wallace, while J’Bria is the child of Gilkey and Magee. Prior to her marriage to Wallace, Gilkey married Magee on January 5, 1984. Wallace and Gilkey were married on February 4, 1989. The record contains a divorce petition that was filed by Gilkey on February 23, 1989, seeking a divorce from Ma-gee; however, Gilkey did not pursue that petition, and it was dismissed for lack of prosecution. On November 26, 2004, Gil-key passed away.
¶ 4. On September 29, 2005, Wallace filed a petition for administration, requesting that he be appointed as administrator of Gilkey’s estate. His petition alleged that Gilkey had passed away “as a result of a fatal condition believed to have been caused by medical negligence.” The petition stated that Wallace had “individually, and on behalf of [Christopher], a minor, retained [an attorney] to investigate and prosecute any claim they may have due to the death of [Gilkey]....” J’Bria joined in Wallace’s petition. On October 4, 2005, the chancery court granted Wallace’s petition and appointed him as the administrator of Gilkey’s estate. The court’s decree stated that Gilkey was “believed to have left as her sole and only heirs at-law, [Wallace] her husband, her natural daughter [J’Bria], an adult, and [Christopher], a minor, her natural son.”
¶ 5. On November 30, 2005, Wallace, as administrator of Gilkey’s estate, filed a wrongful-death complaint against Dr. Mohamed. On October 22, 2007, Dr. Mohamed filed a motion to intervene in the administration of the estate “for limited purposes,” wherein he alleged that Gilkey had married Magee on January 12, 1984, and that Gilkey had never been divorced from Magee. Dr. Mohamed further pointed out in the motion that J’Bria and Bertha Gilkey, Gilkey’s mother, had both testified at depositions that they thought that Gil-key was still married to her first husband when she married Wallace. Dr. Mohamed further asserted that both J’Bria and Ber *1090 tha had testified that Wallace was also aware of Gilkey’s first marriage, although he admitted that Wallace had denied any knowledge of the first marriage. Dr. Mohamed contended that the preferred choice for administrator of Gilkey’s estate would be Magee, followed by J’Bria “and [Gil-key]’s minor son, Christopher (through his legal guardian).” Dr. Mohamed ultimately requested that Wallace be removed as administrator and that the chancery court “thereafter appoint an administrator following consideration of the facts as set forth above and in keeping with Mississippi law.” Attached to Dr. Mohamed’s petition were a number of documents, including marriage licenses, the unpursued complaint for divorce that Gil-key had filed, and a copy of the wrongful-death complaint.
¶ 6. J’Bria testified at her deposition that her mother had been married to Ma-gee before she married Wallace and that her mother and Magee were divorced “probably a year or so after they [Gilkey and Wallace] were married.... ” When asked whether Wallace was aware of Gil-key’s first marriage, J’Bria stated: ‘Tes ... She told him.” When asked for details of Gilkey’s marriage to Magee, J’Bria stated that she did not know: (1) how long Magee and Gilkey were married, (2) where Magee and Gilkey were married, or (3) when Magee and Gilkey were married. J’Bria stated that “all” she knew was that “they were married when I was first born.... ” J’Bria stated that she was born on October 19, 1983, but the marriage license for Magee and Gilkey states that they were married on January 5, 1984. Therefore, the record belies J’Bria’s statement that Magee and Gilkey were married at the time of her birth. J’Bria consistently testified that Gilkey and Magee were divorced, although J’Bria did not know when the divorce was finalized or where it was filed. Clearly J’Bria’s testimony was insufficient to find that Gilkey and Magee had not been divorced prior to Gilkey and Wallace’s marriage.
¶ 7. Bertha testified at her deposition that Gilkey had been married twice before her marriage to Wallace — first to Magee, and then to a man named Ebenezer Iyal-lah. As had J’Bria, Bertha testified that she thought that Gilkey was still married to one of those men when she wed Wallace. Also like J’Bria, Bertha consistently testified that Gilkey had divorced both men at some point, although Bertha did not know when or where. There are no documents in the record supporting Bertha’s assertion that Gilkey and Iyallah were married.
¶ 8. During his deposition, Wallace testified that, to his knowledge, Gilkey had not been married before she and Wallace were wed.
¶ 9. Additional facts, as necessary, will be related during our analysis and discussion of the issues.
ANALYSIS AND DISCUSSION OF THE ISSUES
¶ 10. Our supreme court has discussed the standard of review that is employed when an appellate court reviews the judgment of a chancellor:
We will not interfere with or disturb a chancellor’s findings of fact unless those findings are manifestly wrong, clearly erroneous, or an erroneous legal standard was applied. Smith v. Hollins, 905 So.2d 1267, 1270 [ (¶ 6) ] (Miss.2005) (citations omitted). For questions of law, we employ a de novo standard of review and will reverse only for an erroneous interpretation or application of the law. [M] (citations omitted).
In re Estate of Farmer ex rel. Farmer, 964 So.2d 498, 499 (¶ 3) (Miss.2007).

*1091
1. Standing

¶ 11. Wallace first contends that Dr. Mohamed was without standing to intervene in the administration of the estate. In National Heritage Realty, Inc. v. Estate of Boles, 947 So.2d 238 (Miss.2006), our supreme court discussed whether a nursing home had standing to intervene in the administration of an estate. Ultimately, the Boles court found that the nursing home had standing “before the chancery and circuit courts.” Id. at 246 (¶ 24). Although the supreme court so found, it came to that conclusion due to circumstances not present in our case. Specifically, the supreme court found that the nursing home had standing to intervene in the chancery court action because it had “challenged the [chancery court’s] subject matter jurisdiction to open the Estate.” Id.
¶ 12. In the present case, Dr. Mohamed has not attacked the jurisdiction of the chancery court. Therefore, we find the holding in Boles inapplicable to the case before us. However, we do find Dr. Mohamed’s position analogous to the position of the defendant in Estate of Johnson v. Hemingway, 779 So.2d 164 (Miss.Ct.App.2000). In that case, this Court found that a doctor had no standing to intervene in an heirship action brought in chancery court. Id. at 166 (¶ ¶ 5-8). In so finding, we stated that:
A medical[-]malpractice action had been filed against [the doctor] alleging that his negligence caused the death of [the decedents]. [The doctor] was entitled to defend that action. However, there is no suggestion that [the doctor’s] defense to the claim of negligence would be in anyway impacted by the paternity or heirship action. If [the doctor] was negligent, his liability existed independent of the paternity or heirship action. Likewise[,] his substantive defenses to the medical[-]malpraetice action existed independent of, and would not be impacted by, the paternity or heirship actions.
[The doctor] has given his reason for intervention as a desire to avoid the cost of defending an action filed by the wrong party. The existence of an economic interest, without more, is insufficient to allow ... intervention. Cohen v. Cohen, 748 So.2d 91[, 93] (¶ 12) (Miss.1999).
Id. at 166-67 (¶ ¶ 8-9) (emphasis added).
¶ 13. Just as the doctor in Johnson, Dr. Mohamed has no reason to intervene other than “a desire to avoid the cost of defending an action filed by the wrong party.” Therefore, we find that he lacked standing to intervene in the administration of Gil-key’s estate. For this reason, we reverse and render the judgment of the chancery court that removed Wallace as the administrator of Gilkey’s estate.

2. Removal of Wallace as Administrator

¶ 14. Although we have found that Dr. Mohamed lacked standing to intervene in the administration of the estate, we explain why our result would be the same even if we were to find that Dr. Mohamed had standing to intervene in this case.
¶ 15. In its order removing Wallace as the administrator of Gilkey’s estate, the chancery court stated the following, which we quote verbatim:
Before the [c]ourt is Emad H. Mohamed, M.D.’s ... [m]otion to [i]nter-vene for [l]imited [p]urposes. In essence, Dr. Mohamed wants to intervene in this case to see that Louis M. Wallace ... is removed as administrator of the estate and someone else appointed to serve.
*1092 When Mr. Wallace filed for administration, he swore in the petition that he was the widower of Cynthia Gilkey Wallace .... J’Bria Gilkey also joined in the petition as the daughter of the decedent[,] and she swore that Mr. Wallace was the decedent’s husband.
Dr. Mohamed is a defendant in a medi-eal[-]malpractice action filed by this [e]state and the wrongful death beneficiaries of the decedent. In the course of discovery, it was determined that the decedent was married to Keith Magee when she married Mr. Wallace. A divorce complaint was filed by the decedent!,] but the action was not pursued!,] and a divorce was never granted. Hence, the decedent remained married to Mr. Magee at her death and when she purportedly married Mr. Wallace.
The [c]ourt believes that this estate would be better served by the [c]lerk of this [c]ourt being appointed as [administrator.
IT IS THEREFORE ORDERED that Dr. Mohamed’s [m]otion to [intervene solely to see that Mr. Wallace is removed as administrator and a disinterested third party appointed to that position is sustained. Louis M. Wallace is removed as administrator of the estate and [the clerk of the court] is appointed in his stead. [The clerk]’s official bond is to serve as her bond in this action. The [c]lerk is hereby directed to mail a copy of this [o]rder to all counsel of record after same is filed.
(Emphasis added). We note several points about this order: first, it did not find that Wallace had committed a fraud upon the court; second, there was no specific reason given as to why Wallace was inadequate to serve as administrator; and third, the order implied that the chancery court was attempting to appoint “a disinterested third party” as administrator.
¶ 16. We find that Wallace should not have been removed as the administrator. We find that this is so because the evidence is wholly inadequate to show that Wallace was not Gilkey’s legal husband at the time of her death. The only evidence of such has already been related in this opinion. To summarize, the evidence was that: (1) Gilkey and Magee were married prior to Gilkey’s marriage to Wallace; (2) no divorce decree was presented to show that Gilkey and Magee were divorced, although an unprosecuted petition was presented; (3) J’Bria testified that Wallace and her mother were never properly married, although she maintained that Gilkey and Magee had divorced at some point in time; and (4) Bertha testified that Gilkey had been married twice before Gilkey married Wallace and had been divorced at some unknown times.
¶ 17. Neither Bertha nor J’Bria were able to affirmatively provide any specific date or county where they believed that Gilkey had been divorced from Magee, although both were certain that the two had divorced at some time. Although both believed that the divorce had occurred after Gilkey’s marriage to Wallace, neither was able to provide an accurate timeline of what had happened when. Furthermore, although there was evidence of Magee’s marriage to Gilkey, there was no evidence showing that the marriage had not ended by divorce. Most significantly, there were no certificates from the clerks of any of the counties where Gilkey and Magee had lived prior to Gilkey’s marriage to Wallace affirmatively showing that there was no divorce from Magee on record in any of those counties. Ultimately, that is the proof that Dr. Mohamed would have needed to present in order to prove that Wallace’s marriage to Gilkey was invalid.
¶ 18. As stated by our supreme court, “a subsequent marriage raises the pre *1093 sumption that the former marriage has been terminated by divorce or death of the prior spouse.” Estate of Erwin v. Hodge, 317 So.2d 55, 57 (Miss.1975). The Erwin court then went on to affirm the procedure for proving such cases:
The practical course of proof in such a case would be to show where each party to the prior marriage had resided up to the time of the second marriage, and then to procure from the clerk of the proper court in each county a certificate of search showing that no divorce or annulment had been granted by the court of which he is clerk.
Id. (quoting Pigford Bros. Constr. Co. v. Evans, 225 Miss. 411, 421, 83 So.2d 622, 625 (1955)). In the present case, the proof must fail. There has been no procurement of certificates from the clerks in each of the counties where Gilkey lived “showing that no divorce or annulment had been granted.” Accordingly, we find that the evidence was wholly insufficient to support Dr. Mohamed’s assertion that Wallace was not Gilkey’s legal spouse.
¶ 19. Furthermore, we note that there was no finding that Wallace had committed a fraud upon the court. Additionally, the chancery court made no finding that Wallace is not the natural father of Christopher, despite Dr. Mohamed’s suggestions to the contrary. Therefore, given the statutory order of preference,[2] Wallace is preferred to serve over the chancery court clerk because he is the natural father of one of Gilkey’s heirs. As to Gilkey’s other heir, J’Bria joined in the petition requesting that Wallace be appointed as the administrator of Gilkey’s estate. Finally, if the chancery court were attempting to appoint a “disinterested third party,” how would Wallace be any less adequate than the chancery court clerk? Since there was no finding that Wallace had committed any fraud upon the court, the removal could have only been on the basis of the court’s finding that Wallace was not Gilkey’s legal husband at the time of her death. As we have already discussed, the evidence was wholly insufficient to support any such finding.
¶ 20. In short, we find that Dr. Mohamed lacked standing to challenge the administration of Gilkey’s estate. Furthermore, we find that, even had Dr. Mohamed had standing, there is insufficient evidence to support the chancery court’s removal of Wallace as administrator. Accordingly, the judgment removing Wallace as administrator is reversed and rendered, and the case is remanded to the chancery court for entry of an order reinstating Wallace as administrator of Cynthia Gilkey Wallace’s estate.
¶ 21. THE JUDGMENT OF THE CHANCERY COURT OF LOWNDES COUNTY IS REVERSED AND RENDERED, AND THIS CASE IS REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE AP-PELLEES.
KING, C.J., LEE AND MYERS, P.JJ., GRIFFIS, BARNES, ISHEE, ROBERTS AND MAXWELL, JJ., CONCUR.

. Magee's name is sometimes spelled "McGee” in the record.

. Mississippi Code Annotated section 91 — 7— 63(1) (Supp.2009) gives the order of preference for appointment of administrator as spouses first, then "such others as may be next entitled to distribution if not disqualified.”