MAMIE SIMPSON *v.* STATE COMPENSATION COMMISSIONER

(No. 7864)

Submitted April 10, 1934. Decided April 17, 1934.

*Brown W. Payne,* for appellant.

*Homer A. Holt,* Attorney General, and *Kenneth E. Hines,* Assistant Attorney General, for respondent.

HATCHER, JUDGE:

In November, 1930, Pete Simpson went through a regular marriage ceremony with Mamie Saunders, a single woman. At that time he had a wife who had deserted him, but from whom he had not been divorced. Mamie was not aware of his marital impediment. She was the mother of William, then eleven months old, an illegitimate child by another man. Simpson was killed in July, 1932, while at work for a subscriber to the Workmen's Compensation Fund. Between November, 1930, and July, 1932, Simpson voluntarily maintained a home for, and furnished the entire support of, Mamie and William. The compensation commissioner awarded compensation to Mamie, as the dependent widow of Simpson, but denied compensation to William. This appeal was secured in his behalf.

Code 1931, 23-4-1, directs disbursément of the compensation fund to "the dependents" of such a decedent. Who are dependents, under the compensation statutes, are designated in 23-4-10(g). Included in that designation are a child under sixteen years of age, and a stepchild under sixteen years of age, provided that, at the time of the injury causing the death of the workman, such child "is dependent in whole or in part for his or her support upon the earnings of the employee." The word "child" as used in the statute evidently refers to a son or daughter of the employee. As it is not questioned that William was supported by the earnings of Simpson, William's claim depends on whether or not he can be regarded as a stepchild.

Dictionaries and textbooks generally define the word "stepchild" as "the child of a wife or husband by a former marriage." *Lipham* v. *State*, (Ga.) 53 S. E. 817. The birth of William out of wedlock is taken by the commissioner to exclude William from classification as a stepchild. In support of this position, the commissioner cites *Splitdorf Co.* v. *King*, (N. J.) 103 Atl. 674; *Scott* v. *Ice Co.*, (Md.) 109 Atl. 117, and *Knoxville Co.* v. *Meek*, (Tenn.) 21 S. W. (2d) 625. The New Jersey and Maryland cases are not persuasive, as they are based on bastardy statutes which have received a much narrower construction than ours. The

Tennessee case simply cites and accepts the usual definition of the word "stepchild".

*Lipham* v. *State, supra,* refused to be bound by that definition saying, "The framers of statutes are men of affairs, rather than rhetoricians, balancing the various shades of meaning of language employed, and words are to be given their ordinary intendment and effect. * * * A bastard in the eye of the law has no father, but the relationship between the illegitimate offspring and the mother is recognized, even to the extent of the capacity of the illegitimate to inherit. It would therefore seem unreasonable to hold that no affinity existed between the husband and the illegitimate child of the woman born before marriage."

The Compensation Act of Minnesota includes stepchildren as dependents. In *Lunceford* v. *Fegles,* (Minn.) 239 N. W. 673, a case identical with the instant one, the court recognized the general definition of the word "stepchild" but also refused to be bound by it saying that it was not a universal definition. The opinion proceeds: "She (the illegitimate) was a member of the family of the deceased. The deceased had assumed the obligation of support from the time of his marriage to her mother. * * * The Compensation Act is construed liberally. It is not a statute of descent and distribution. Compensation is not by way of inheritance. Its purpose is to give relief to designated dependents of one killed in industry. The child Marcella should be construed to be a stepchild of the deceased." The Compensation Act of New York now includes a stepchild as a dependent. In *Larsen* v. *Harris,* 243 N. Y. S. 654, another case similar in every material respect to the one here, the court held that an illegitimate child was a stepchild under the Act.

We are in accord with the above Georgia, Minnesota and New York decisions. Code 1931, 42-1-5, provides that "Bastards shall be capable of inheriting and transmitting inheritance on the part of their mother, as if lawfully begotten." The statute came to us from Virginia. *Garland* v. *Harrison* (1837), 8 Leigh 368; *Hepburn* v. *Dundas* (1856), 13 Gratt. 219, and *Bennett* v. *Toler* (1860), 15 Gratt. 588, all binding on this court, established beyond question that the statute conferred upon an illegitimate the same legal kin-

ship to his mother, uterine brothers and sisters, and other blood kindred through the mother, as if he were legitimate. Therefore, the relation between Mamie and William was the same in every particular as if he had been lawfully begotten. It was her duty to support him just the same as if he had been born in wedlock. Her marriage did not terminate the duty. But as an incident of the marriage her husband assumed that duty. His assumption was solely because of Mamie's motherhood and without any regard to the father of the child. Simpson's maintenance of William was the same, and his factual relation to William the same, as if the child had been legitimate. Simpson supported William as his own child. So *in fact,* the illicit association from which William sprang had no effect on the relationship between Simpson and William. The workmen's compensation law was designed to meet the actualities of life rather than the formulas of lexicology. The status of a stepchild under the compensation law should be determined from the relation actually established between the child and the stepfather rather than from the accident of the child's paternity. We hold accordingly that William is *a compensable stepchild.*

The ruling of the commissioner as to William is reversed.

*Reversed.*