Opinion by
 

 Stadtfeld, J.,
 

 This is a workmen’s compensation case in which the referee made an award in favor of the claimant. The award was affirmed by the board and on appeal to the court of Common Pleas of Allegheny County, judgment was entered thereon. This appeal followed.
 

 George Kirkpatrick, who was employed by the Union Collieries Company as a coal miner, met with an accident on March 5, 1936, which caused his death the same day. His wife died three months later on June 21,1936.
 

 The original claim petition in this case was filed by the deceased’s widow, Esther Kirkpatrick, and by the Union Trust Co., Guardian of the estate of Laura Kirkpatrick, an illegitimate child of the widow, born to her prior to her marriage to decedent.
 

 The referee made, inter alia, the following findings of fact which were affirmed by the board: “Fourth: That decedent left to survive him Esther Kirkpatrick, deceased, his wife, and Laura Kirkpatrick, the latter’s minor dependent daughter, neither of whom were living with him in his home, but were dependent upon him for support at the time of his death. Fifth: That the decedent and Esther Wertz Kirkpatrick, deceased, were married February 23, 1929. Sixth: That Laura Kirkpatrick was born to Esther Wertz Kirkpatrick deceased, on December 17, 1926. Seventh: That decedent and Esther Kirkpatrick, deceased, separated July 6, 1934. Eighth: That Esther Kirkpatrick, deceased, sought relief from decedent in the Desertion and Non-Support Court on October 15, 1934. Ninth: That Esther Wertz Kirkpatrick, deceased, died June 21, 1936, Tenth: That
 
 *407
 
 at the time of decedent’s death, March 6, 1936, Esther Kirkpatrick, deceased, and her minor dependent child, Laura Kirkpatrick, claimant, were living at the home of the latter’s [former’s] mother, Mrs. Margaret Wertz who substantially contributed toward the maintenance and support of the mother and child. Eleventh: That the Union Trust Company was appointed guardian of the estate of Laura Kirkpatrick, minor claimant, by the Orphans’ Court of Allegheny County at No. 247, April 7, 1933.”
 

 The sole question before this court is whether the widow and her illegitimate child were dependents of the deceased employee within the provisions of Section 307, sub-section 7 of the Workmen’s Compensation Law. Said section provides, in part, as follows: “No compensation shall be payable under this section to a widow, unless she was living with her deceased husband at the time of his death, or was actually dependent upon him for support.”
 

 Appellant contends (1) that there was no actual dependency shown and that since the parties were not living together at the time of the accident, any presumption of dependency is destroyed by that fact; and (2) that the daughter, Laura Kirkpatrick, is illegitimate and therefore does not come within the Workmen’s Compensation Act.
 

 George Kirkpatrick and his wife resided together until July 6, 1934, when they separated. During this period, from February 23, 1929, to July 6, 1934 — more than five years — Laura Kirkpatrick lived with George Kirkpatrick in his home, and was supported by him and was a member of his household. He was her only source of support. She was known as Laura Kirkpatrick, and George Kirkpatrick called her his child.
 

 In July, 1934, Esther Kirkpatrick became ill. As her husband, due to the depression, was not earning sufficient wages out of which to provide her with the neces
 
 *408
 
 sary care, he went to Mrs. Margaret Wertz, his wife’s mother, and told her of his wife’s condition and need of medical attention, with the result that, on July 6, 1934, Esther Kirkpatrick and Laura went to the home of Mrs. Wertz where they continued to reside, and were residing on March 6, 1936, at the date of the death of George Kirkpatrick.
 

 After the death of George Kirkpatrick, Esther Kirkpatrick and Laura Kirkpatrick continued to reside with Mrs. Wertz. Esther Kirkpatrick died June 21, 1936, at the West Penn Hospital. The cause of her death was cancer.
 

 From July 6, 1934, when Esther Kirkpatrick went to her mother’s home, taking her child Laura with her, George Kirkpatrick boarded at various places until his death. He first went to the home of his mother and then to the home of a sister (Mrs. George McCarrison), at which latter place he resided during almost all of the year 1935. At the time of his death, on March 6, 1936, he was living in one furnished room.
 

 At no time after July 6,1934, did George Kirkpatrick maintain a home to which his wife could have gone, had her health permitted her to assume the household duties which would have fallen to her.
 

 The testimony of various witnesses indicates that he treated her and the child affectionately, that on at least a few occasions he gave her money and that he frequently expressed the intention of making a new home for the three of them after his wife’s health was restored.
 

 During the time when George Kirkpatrick resided at the home of his sister (Mrs. McCarrison), which was most of the year 1935, Esther Kirkpatrick, accompanied by Laura, visited her husband frequently. During their visits he treated his wife and Laura respectfully. On these visits, she and Laura would remain over night. During this period, Esther’s physical condition was poor.
 

 
 *409
 
 While Mrs. Kirkpatrick was at the hospital, her husband discussed with her mother (his mother-in-law) plans for a resumption of housekeeping if and when she would be cured of her affliction.
 

 On or about October 15, 1934, Mrs. Kirkpatrick applied for a court order against Mr. Kirkpatrick for support. No record was introduced, nor was any testimony presented in explanation of this proceeding, or its outcome if it was ever disposed of. It is important, if for no other reason, as an indication that Mrs. Kirkpatrick had no intention of permitting Mr. Kirkpatrick to repudiate his duty to support her.
 

 George Kirkpatrick was made a party in a suit instituted in the Court of Common Pleas of Allegheny County, to recover damages for personal injuries suffered by his step-daughter. Paragraph seven of the statement of claim, which was sworn to by Kirkpatrick, recites in part that “George Kirkpatrick, the stepfather of said minor, who stands in loco parentis to said minor, has and will be compelled to spend large sums of money in buying medicine and paying hospital bills .......” The affidavit to the statement of claim is dated March 31, 1933.
 

 There was likewise offered in evidence as an indication that decedent had not repudiated his duty to support his wife, a life insurance policy issued by the Prudential Insurance Company of America on the life of George Kirkpatrick in the amount of $500 payable to Esther Kirkpatrick, his wife. The policy is dated July 8, 1935.
 

 Esther Kirkpatrick was dependent on her husband for support. She had no income of her own. Laura Kirkpatrick was likewise dependent on him for support. Until July 6, 1934, there is no question but that George Kirkpatrick supported both his wife and her daughter. After she went to her mother’s home, he gave her money to pay bills. She bought things for her personal use
 
 *410
 
 and charged the same to his account. In regard to the hospital and doctor bills, he said he was going to borrow some money to pay them.
 

 After a careful examination of the record, we are satisfied that there is ample evidence to support the findings of the referee that Mrs. Kirkpatrick was at least partially dependent upon her husband for support prior to his death. There was no evidence that there had been any desertion on the part of either spouse breaking the marital status, the evidence being that the separation was necessitated because of the wife’s illness and the financial circumstances of the husband.
 

 The case* of
 
 Shimkus v. Phila. & Reading C. & I. Co.,
 
 280 Pa. 88, 124 A. 335, the Supreme Court, speaking through Mr. Justice Kephart, (now Chief Justice) said at p. 90: “In compensation cases, where a wife lives separate and apart from her husband, dependency contemplates actual dependency, and must affirmatively appear in the record as a fact; the amount of evidence necessary to show it depends on the circumstances of each case.
 
 Actual dependency does not mean sole and exclusive support; it includes as well partial support. A wife not living with her husband, who is supported) by him m whole or in part at the time of an accident, is a dependent within the meaning of the statute.
 
 Separation that ‘amounts to a repudiation of the husband’s legal obligation to support, acquiesced in by the wife,’ is conclusive.
 
 Morris v. Yough Coal & Supply Co.,
 
 supra, 220. The principles here announced were followed in
 
 Creasy v. Phoenix Utilities Co.,
 
 276 Pa. 583, 585, 586. The facts in this case are well within these principles.” (Italics supplied.)
 

 In
 
 Pykosz v. Koehler & Streng et al.,
 
 105 Pa. Superior Ct. 605, 161 A. 469, our court in an opinion by Judge Baldrige said, at p. 608: “It has been held many times that actual dependency, as contemplated by the compensation act, does not mean sole and exclusive support.
 
 *411
 
 If a wife, not living with her husband, was actually dependent upon him for partial support, although all contributions made by him may have ceased temporarily, and there was a mutual intent to continue the marital status, the widow is entitled to an award:
 
 Geytko v. P. & E. Coal Co.,
 
 88 Pa. Superior Ct. 522;
 
 Bobic v. Pgh. Gas Coal Co.,
 
 93 Pa. Superior Ct. 494.”
 

 As stated by Judge Cunningham in
 
 John v. Susquehanna Collieries Co.,
 
 113 Pa. Superior Ct. 493, 173 A. 684, at p. 499: “......Receipt of support is of course evidence tending to show actual dependency. A failure to give support, on the other hand, does not conclusively negative dependency where the wife has not acquiesced in the default or treated the relationship as terminated
 

 Likewise in
 
 Sznitko v. Maher & Graff C. Co.,
 
 93 Pa. Superior Ct. 463, 466: “......If the separation result for the joint advantage of the parties and the obligation of the husband to support her is recognized, the right of compensation exists as if they were living together.
 

 In the instant case, we have both dependency and contribution as well as recognition of responsibility.
 

 As to the award for Laura, the minor child of the wife: Section 307 of the Workmen’s Compensation Act of June 2,1915, P. L. 736, provides in part: “The terms 'child’ and 'children’ shall include stepchildren and adopted children and children to whom he stood in loco parentis, if members of decedent’s household at the time of his death, and shall include posthumous children.”
 

 Section 1 of the Act of July 10, 1901, P. L. 639, 11 PS 1, provides as follows: “Illegitimate children shall take and be known by the name of their mother, and the common law doctrine of nullius filius shall not apply as between mother and her illegitimate child or children. But the mother and her heirs, and her illegitimate child and its heirs, shall be mutually liable to one an
 
 *412
 
 other, and shall enjoy all the rights and privileges one to the other, in the same manner and to the same extent, as if the said child or children had been born in lawful wedlock.”
 

 In construing this statute, the Supreme Court, in
 
 Commonwealth v. Mackey,
 
 222 Pa. 613, 72 A. 250, speaking through Mr. Justice Brown, p. 616, said: “...... The expressed purpose of the act is to legitimate an illegitimate child as to its mother, and, as a proper, logical and humane incident to such legitimation, to confer upon such child every right and privilege enjoyed by a child born to wedded parents.......”
 

 In
 
 Thompson v. Dela., L. & W. R. R. Co.,
 
 41 Pa. Superior Ct. 617, in the opinion of Orlady, J., is found a history of the legislation prior to the Act of July 10, 1901, supra, and in speaking of this Act, Judge Orlady said, p. 624: “There is no ambiguity in its provisions; it is the last step taken in a long series of enactments and adjudications, involving the same subject-matter, and each enactment is a step forward in the direction of relief and protection for the unfortunate mother of an illegitimate child, and of an increase of the rights of her offspring. By its very terms the common-law doctrine of nullius filius no longer applies; ......With this declaration of intention, can it be questioned that the object and effect of this statute was to change the status and capacity of an illegitimate child to the status and capacity of a legitimate child, and create the relation of parent and child for all purposes as if the latter had been born in lawful wedlock.”
 

 Clearly, under the case cited, Laura, although illegitimate, was, for all purposes, the child of her mother, as if born in lawful wedlock, and when her mother subsequently married George Kirkpatrick, she became his stepchild in like manner as had she been born to her mother during lawful wedlock.
 

 Laurai Kirkpatrick was, for upwards of five years,
 
 *413
 
 supported by the deceased, until the enforced separation under the circumstances hereinbefore stated; she had no other means of support; she bore his name and he recognized her as his stepchild and that he stood in loco parentis; from the day of his marriage he accepted Laura Kirkpatrick as part of his household and gave her the same affection, protection and care that he would give a child of his own. In the case of
 
 Shimkus v. Phila. & Reading C. & I. Co.,
 
 supra, the Supreme Court said, at p. 91: “The board found as a further fact that the step-children lived for six months previous to his death in the home from which the husband had temporarily withdrawn. Under the facts found, the home of the wife might well be considered the home of the husband, and, as it has been so found as a fact, the act of assembly allows the step-children compensation. Section 307 provides that the terms ‘child’ and ‘children’ shall include step-children and adopted children. We need not discuss this part of the act any further, in sustaining the award to the step-children, including, of course, his own child born after his death.”
 

 After a careful consideration of the entire record, we are of the opinion that competent evidence supports the findings of the referee, affirmed by the board, and that the court below properly entered judgment on the award.
 

 The assignments of error are overruled and the judgment affirmed.