Lola Marie SMITH, a Minor, By Thos. A. Nicholas, Guardian ad litem, Appellant (Plaintiff and Applicant below),

v.

NATIONAL TANK COMPANY, Appellee (Employer-Defendant below),

Beatrice Carson, on behalf of David Everett Carson, a Minor (Applicant below).

In the Matter of the Claim for Workmen's Compensation Resulting from the Death of Everett Asa Smith, Employee of National Tank Company.

No. 2922.

Supreme Court of Wyoming.

March 29, 1960.

Harold I. Bacheller and Thomas A. Nicholas, Casper, for appellant.

Mahoney, Murphy & Emery, Jack D. Emery, Casper, for appellee.

Before BLUME, C. J., and PARKER and HARNSBERGER, JJ.

Mr. Chief Justice BLUME delivered the opinion of the court.

This is a case of workmen's compensation. Everett Smith, aged 20, worked for the National Tank Company from about the latter part of December 1957 to March 6, 1958. On March 6 he was injured in the course of his employment and died during the night, expiring on March 7, 1958. A claim for workmen's compensation was made by his wife, Eleanor. She was allowed by the court the sum of $7,000 as his surviving widow. The tank company appealed to this court but the appeal was dismissed for the reason that the tank company did not comply with the rules of this court.

· The wife also made a claim for workmen's compensation on behalf of her daughter, Lola Marie Smith, born on August 1, 1956. The court disallowed that claim and an appeal has been taken to this court on behalf of the daughter and the question herein is whether or not an allowance should be made for and on behalf of that daughter.

It appears herein also that a claim was made by one Beatrice Carson on behalf of her minor son, David, claimed to be the son of the decedent. It does not appear herein what the court did in connection with this claim. We surmise that it was disallowed on account of the fact that David was an illegitimate child of the decedent and therefore was not entitled to any compensation. See In re Dragoni, 53 Wyo. 143, 79 P.2d 465.

The evidence herein indicates the following: Eleanor Smith and the decedent were married at Custer, South Dakota, on June 10, 1955. They returned that day to Casper, Wyoming, and lived in Casper about a month and a half. They then went to Arizona and had stayed there about two weeks when apparently the decedent was arrested on a charge of transporting a stolen truck across state lines and Eleanor returned to Casper. On August 1, 1956, she gave birth to the child, Lola Marie Smith. After Eleanor stated that decedent was taken to Texas on a federal charge in July 1955, that he was in "prison hospitals" in Missouri and Oklahoma, and that he returned to Casper in July 1956, she was asked:

"Q. So, then, you and your husband did not live together during the period of July, 1955 to July, 1956. Is that correct? A. That is right."

No objection was interposed. This testimony shows that the child could not have been the child of the decedent.

Eleanor testified that when the decedent came back to Casper in the latter part of July 1956 she, Eleanor, lived with her sister, Mrs. Oliver, and that the decedent at that time lived with her and ate meals with her until sometime in December 1956 when the decedent was arrested for robbery and sent to the reform school at Worland, Wyoming. It does not appear that the decedent was earning any money during the summer and fall of 1956. Eleanor further testified that the decedent came back from Worland sometime in December 1957 and that he then also lived with her at her sister's residence, had some of his clothing there, ate some meals there, and that he then paid her some money for the support of herself and the child. She admitted that he was living at the Parkway Hotel during that time but insisted that he was also living with her.

Mrs. Oliver, sister of Eleanor, did not corroborate Eleanor in connection with the decedent living with the latter either during 1956 or from December 1957 to March 1958, and it is somewhat difficult to determine where Eleanor actually lived. Mrs. Oliver testified that "they", during 1957 and before the death of decedent, lived in a trailer which "they" rented from her and that at one time decedent paid her the rent in the sum of $30, but she stated that he was not at that time living with Eleanor in the trailer.

On the other hand, Beatrice Carson testified that she met the decedent about August 1, 1956, which must have been within a few days after the decedent returned to Casper. She stated that he was then living in a room of the Sales Chevron Station which had furniture in it and that he had his clothing at that place. She testified that she had sexual relations with him and conceived a child by him in September 1956, the child being born in June 1957; that after living in the room above mentioned he moved to the house where she was living with her mother about November 1, 1957; and that he lived in her home until he was arrested and taken to Worland. After returning from Worland in December 1957 he lived at the Parkway Hotel; however, he supported her and her child, gave her about $120 a month and bought groceries, medical supplies and other things for her and for her child; he had

his meals during that time at the Coffee Cup or with her and her mother; she saw him about every day; and during that time he mentioned the fact that he wanted to get a divorce from his wife. The statement about the divorce was corroborated by the testimony of one Antonio Montano.

It appears that the decedent was injured during his employment by the National Tank Company on January 22, 1958, hurting his finger. The record at page 85 shows that he filed a claim in the District Court of Natrona County on January 29, 1958. At that time he gave his dependents as Beatrice, aged 22, apparently as his wife, and a son, David, aged 6½. This "6½" must have related to months and not to years. During the night of March 6, 1958, and just before he died, he told James D. Thomas, manager of the National Tank Company, that he had no wife.

 As heretofore indicated, there can be no doubt that Lola Marie Smith, born on August 1, 1956, was an illegitimate child of Eleanor Smith and not the child of the decedent workman according to the testimony of Eleanor Smith herself. She would certainly know whether or not the child was that of the decedent. The presumption of legitimacy mentioned by counsel for appellant is clearly overcome by Eleanor's testimony. In this connection some evidence was introduced showing the violation of federal law and the incarceration of the decedent and counsel for appellant say that that was error. However, that evidence was not important. Even though this evidence was incompetent, it could not change the result in this case and would not be regarded as a ground for reversal. Macy v. Billings, 74 Wyo. 404, 289 P.2d 422; and see 1 West's Wyo. Digest, 1956, Appeal and Error, The question before us therefore, as already stated, is whether or not this illegitimate child is entitled to workmen's compensation under our statute. Section 27–49 [II] (d), W.S.1957, provides:

"'*Child or children*' means the immediate offspring, stepchild or step-children or legally adopted child or children of the injured workman, under eighteen (18) years of age or under twenty-one (21) years of age (if physically or mentally incapacitated from earning) and shall also include *legitimate children* of the injured workman born after his death or injury. * * *" (Emphasis supplied.)

It is claimed that an illegitimate child may be regarded as a stepchild and would therefore come under the provisions of our statute. In a number of cases it has been held that where the wife of a workman had an illegitimate child and thereafter married the workman such illegitimate child cannot be regarded as a stepchild under the workmen's compensation provisions. Knoxville Gray Eagle Marble Co. v. Meek, 159 Tenn. 577, 21 S.W.2d 625; In re Marshall, 117 Ind.App. 203, 70 N.E.2d 772; Sharp v. Borough of Vineland, 117 N.J.L. 598, 190 A. 44, affirmed 118 N.J.L. 567, 194 A. 260; Dangerfield v. Indemnity Ins. Co., La.App., 19 So.2d 598, affirmed 209 La. 195, 24 So.2d 375; Murrell v. Industrial Commission, 291 Ill. 334, 126 N.E. 189. The opinions in the Indiana case and the Louisiana case mention the fact that the child was not acknowledged as the child of the deceased workman, and in the Illinois case the illegitimate child considered was the child of the deceased workman. In the Dangerfield case the court held that an illegitimate child of a woman who subsequently marries the workman cannot be considered a stepchild even though it is taken into the home of the workman and supported by him. Generally speaking, the definition of a stepchild, as found in dictionaries and textbooks, is "the child by a former marriage of either the husband or the wife." See 82 C.J.S. Step, p. 1066, and 40 Words and Phrases, stepchildren, stepdaughter, stepfather, pp. 142–145.

On the other hand, a number of cases hold that where a woman has an illegitimate child before her marriage to the workman and then marries the workman, who takes the child into his home, acknowledges the child as his and supports it, the child would

542

be regarded as a stepchild. That is held in the following cases: Pigford Brothers Construction Company v. Evans, 225 Miss. 411, 83 So.2d 622; Larsen v. Harris Structural Steel Co., 230 App.Div. 280, 243 N.Y.S. 654; Union Trust Co. v. Union Collieries Co., 131 Pa.Super. 405, 200 A. 267; Simpson v. State Compensation Commissioner, 114 W.Va. 814, 174 S.E. 329; and Lunceford v. Fegles Const. Co., 185 Minn. 31, 239 N.W. 673. See also 99 C.J.S. Workmen's Compensation § 141(2)c, notes 14, 15, p. 484. Illustrative of this holding is the case of Lunceford v. Fegles Const. Co., supra, at 239 N.W. 674, in which the court held that the child was a stepchild and stated, among other things:

"The question is whether the child Marcella is a stepchild and member of the family of the deceased and dependent upon him for support. The term 'stepchild' by general definition is the child by a former marriage of either the husband or the wife. This is not a universal definition; it is the general one. Marcella does not come within it. She was a member of the family of the deceased. The deceased had assumed the obligation of support from the time of his marriage to her mother. She was a member of his family and dependent upon him. He and his wife and the two children constituted the family group. The girl and the boy had the same treatment. The decedent was attached to both. The girl considered him her father. She was held out as his daughter. The neighbors quite generally at least supposed they were the children of the two. The decedent supported them in fair comfort, though in a humble way, until his wife was afflicted with tuberculosis. * * * "

It is not necessary herein to determine which line of authority above mentioned we should follow. That matter is left open for future determination. The case at bar is entirely different from any of the cases which we have read upon the subject before us. The court was entitled to reject the testimony of Eleanor Smith in this connection. Other facts and circumstances shown herein gave ample room for the inference that the illegitimate child of Eleanor Smith was not taken into the household of the decedent workman. In fact, he had no household. There is no evidence that he ever acknowledged the child as either his own child or as a dependent. In the early part of August 1956 he wrote a letter to the parole board in Cheyenne in which he stated in part:

"Dear Sir:

"I am writing you this letter to ask some advice or to find out if it is alright with the 'Parole Board' to get a divorce on the grounds of adultry (sic). While I was at the 'Medical Center' I heard from my wife only twice and that was back in January of this year, so, today I went to see my wife's grandmother and she told me that my wife has been living with another man for quite some time, and also, that she has had a baby by this man about the first of this month."

That and other matters above mentioned are hardly consistent with an acknowledgment of the child. Eleanor's child was the result of her adulterous relation with another man. To award compensation for her child would be to forget, forgive and, in fact, put a premium upon, adultery. This court should not be asked to do that. The judgment of the trial court is affirmed.

Affirmed.