544 S.E.2d 387

Christopher Wayne TAYLOR, Plaintiff Below, Appellant,

v.

Barbara D. HOFFMAN, Administratrix of the Estate of Barry Jordan Hoffman, Deceased, Jennifer Hoffman and Stephanie Hoffman, Defendants Below, Appellees.

No. 27777.

Supreme Court of Appeals of West Virginia.

Submitted Jan. 9, 2001.

Decided Feb. 9, 2001.

Donald K. Bischoff, Summersville, for the Appellant.

Joseph P. Whittington, Peyton, Parenti & Whittington, Nitro, for the Appellee Barbara Hoffman.

E. William Harvit, Harvit & Schwartz, L.C., Charleston, for the Appellees Jennifer and Stephanie Hoffman.

ALBRIGHT, Justice.

This is an appeal by Christopher Wayne Taylor (hereinafter "Appellant") from an October 19, 1999, final order of the Circuit Court of Putnam County granting summary judgment to Barbara Hoffman, Administratrix of the Estate of Barry Jordan Hoffman,

deceased (hereinafter "Appellee"). The Appellant alleged in that action that he was the biological son of the Appellee's deceased husband, Barry Jordan Hoffman (hereinafter "decedent"), and was consequently entitled to a proportionate share of the assets of the estate of the decedent. Based upon a finding that the Appellant's claim was barred by the limitations of actions for the establishment of paternity set out in West Virginia Code § 48A–6–1 (1993) (Repl.Vol.1999), the court below granted Appellee summary judgment, from which judgment Appellant appeals. The Appellant contends that the lower court erred in finding the action time-barred because other provisions of the paternity proceedings statute, particularly West Virginia Code § 48A–6–2(c) (1993) (Repl.Vol.1999), allow his action to proceed. We conclude that the trial court erred in applying the limitations on actions provisions of Article 6, Chapter 48A of the West Virginia Code. Accordingly, we reverse the summary judgment rendered below and remand for additional proceedings consistent with this opinion.

## I. Facts

The Appellant was born on June 9, 1970, in Fayette County, West Virginia. A paternity warrant was issued by a Nicholas County Justice of the Peace on June 30, 1970, under prior law,[1] alleging that the decedent was the Appellant's biological father. The action was settled on September 8, 1970, without an admission of paternity. The settlement required the decedent to pay Appellant's mother Thirty Dollars ($30.00) a month "for the support, maintenance and education" of the Appellant "until said child shall become emancipated or sooner die or until further order of this Court...." The decedent paid child support to the Appellant's mother each month, pursuant to this court order, until the Appellant reached the age of eighteen on June 30, 1988.

The decedent died intestate on October 6, 1994, in Kanawha County, West Virginia. The Appellee was appointed administratrix of the decedent's estate on October 12, 1994. The estate appraisal, filed on April 18, 1995, specifies three heirs of the decedent's estate, including the Appellee, in her individual capacity as the widow of the decedent, and the decedent's two daughters.

On October 5, 1995, the Appellant filed a civil action against the Appellee in the Circuit Court of Putnam County, West Virginia. That action was dismissed for failure to serve the summons and complaint upon the Appellee within 180 days. On October 9, 1998, the Appellant filed an identical civil action in the Circuit Court of Putnam County. The action alleges that Appellant was the biological son of the decedent and entitled to a share of the decedent's estate. Specifically, the Appellant requested the lower court to "declare that Barry Jordan Hoffman, deceased, is the biological father of the plaintiff," and "declare that the plaintiff is entitled to his proportionate share of the assets of the Estate of the said Barry Jordan Hoffman."

The Appellee moved for judgment on the pleadings based upon the statute of limitations set forth in West Virginia Code § 48A–6–1(e)(7) and the equitable doctrine of laches. West Virginia Code § 48A–6–1(c)(7) provides that a paternity proceeding may brought "[b]y the child in his own right at any time after the child's eighteenth birthday but prior to the child's twenty-first birthday." The Appellee emphasized the Appellant's failure to file any claim or law suit concerning the determination of paternity until October 5, 1995, approximately four months after the Appellant's twenty-fifth birthday.

In response, the Appellant asserted that he was statutorily entitled to bring the civil action based upon West Virginia Code § 48A–6–2(c), which provides that "[a] proceeding to establish paternity under the provisions of this article may be brought for any child who was not yet eighteen years of age on the sixteenth day of August, one thousand nine hundred eighty-four, regardless of the current age." The Appellant contends that since he was fourteen years of age on August 16, 1984, he is statutorily entitled to bring the civil action regardless of his current age.

The trial court considered the Appellee's motion as a request for summary judgment and granted the motion, reasoning that West

1. *See* W. Va. § 48–7–1 *et seq.* (1969).

Virginia Code § 48A–6–1(e)(7) required a paternity action to be brought prior to the child's twenty-first birthday and that West Virginia Code § 48A–6–2(c) did not provide an exception which would permit the Appellant's civil action. The Appellant now appeals that order to this Court, contending that his action is permitted by the explicit and unambiguous language of West Virginia Code § 48A–6–2(c).

## II. Standard of Review

■ "Where the issue on an appeal from the circuit court is clearly a question of law or involving an interpretation of a statute, we apply a *de novo* standard of review." Syl. Pt. 1, *Chrystal R.M. v. Charlie A.L.* 194 W.Va. 138, 459 S.E.2d 415 (1995). Since resolution of this matter depends upon a determination of the applicability of a statutory pronouncement to this set of facts, we review the lower court's decision *de novo.*

## III. Article 6, Chapter 48A Does Not Provide a Resolution to This Inheritance Issue.

This case came before us on the claim that Article 6, Chapter 48A of the West Virginia Code, which provides a means of establishing paternity and the duty of child support, controls the outcome of the underlying civil action. An analysis of that statute and its predecessors suggests another conclusion. Article 6 was first enacted in 1983 as Article 8, Chapter 48 of the West Virginia Code, to provide a civil action for the collection of child support, in lieu of the former "quasi-criminal" bastardy action, and to establish a ten-year statute of limitations in lieu of the former three-year limitation which this Court found to be invalid in *State ex rel. S.M.B v. D.A.P.,* 168 W.Va. 455, 284 S.E.2d 912 (1981). In 1986, the 1983 act was revised and incorporated as Article 6 in Chapter 48A of the West Virginia Code, entitled "Enforcement of Family Obligations." The legislative motivation underlying the 1986 enactment is expressed in the act as follows:

It is the purpose of the Legislature in enacting this chapter to improve and facilitate support enforcement efforts in this state, with the primary goal being to establish and enforce reasonable child support orders and thereby improve opportunities for children. It is the intent of the Legislature that to the extent practicable, the laws of this state should encourage and require a child's parents to meet the obligation of providing that child with adequate food, shelter, clothing, education, and health and child care.

W. Va.Code § 48A–1–2 (1986) (Repl.Vol. 1992).

We believe that this statement of legislative purpose points to why the Appellant's primary reliance on the limitation of action provisions within Article 6, Chapter 48A, found in sections 1 and 2 of that article, as amended in 1989, is misplaced. The Appellant relies especially on current section 2, subsection (c), added in 1989.

The trial court in the present case ruled that subsection (c) did not permit the institution of the Appellant's civil action, reasoning that it was "simply an attempt by the legislature to remedy any adverse effects from the previous ten year statute of limitations which the Supreme Court of Appeals held unconstitutional in *Shelby J.S. v. George L. H.,* 181 W.Va. 154, 381 S.E.2d 269 (1989)." An examination of the genesis of subsection (c), however, reveals a more complex rationale.

The federal Child Support Enforcement Amendments of 1984, codified at 42 U.S.C. §§ 651 through 675 (Supp. II 1984) were enacted in response to rulings by the United States Supreme Court indicating that the period for obtaining relief in the form of a paternity action must be sufficiently long to permit a reasonable opportunity to assert paternity claims, and time limitations must be substantially related to a state's interest in avoiding the litigation of stale or fraudulent claims. *See Pickett v. Brown,* 462 U.S. 1, 103 S.Ct. 2199, 76 L.Ed.2d 372 (1983) (declaring Tenn.Code Ann. § 36–224(2) (1977) two-year statute of limitations unconstitutional because it denied certain illegitimate children equal protection of law guaranteed by Fourteenth Amendment to United States Constitution). The 1984 federal act required states to allow actions pertaining to the establishment of paternity to be filed at least until a child reaches the age of eighteen

years. 42 U.S.C. 666(5)(A)(ii) (Supp. II 1984).

The federal legislation provides, in pertinent part, as follows:

> (a) In order to satisfy section 454(20)(A) [42 U.S.C. § 654(20)(A) [State plans must include these requirements to be approved]], each State must have in effect laws requiring the use of the following procedures, consistent with this section and with regulations of the Secretary, to increase the effectiveness of the program which the State administers under this part [42 U.S.C. § 651 et seq.]:
>
> . . . .
>
> (5)(A)(i) Procedures which permit the establishment of the paternity of any child at any time prior to such child's eighteenth birthday. *(ii) As of August 16, 1984, the requirement of clause (i) shall also apply to any child for whom paternity has not yet been established* and any child for whom a paternity action was brought but dismissed because a statute of limitations of less than 18 years was then in effect in the State.

*State v. Doese,* 501 N.W.2d 366, 373 n. 1 (S.D.1993) (Wuest, J., dissenting) (quoting 42 U.S.C. § 666 (1988)) (emphasis provided).

The West Virginia Legislature responded to the federal directive in 1989 by revising the limitations of actions provisions of West Virginia Code § 48A–6–2,[2] including particularly the following provisions of subsections (c) and (d), which provide as follows:

> (c) A proceeding to establish paternity under the provisions of this article may be brought for any child who was *not yet eighteen years of age on the sixteenth day of August, one thousand nine hundred eighty-four,* regardless of the current age.
>
> (d) A proceeding to establish paternity under the provisions of this article may be

brought for any child who was *not yet eighteen years of age on the sixteenth day of August, one thousand nine hundred eighty-four,* and for whom a paternity action was brought but dismissed because a statute of limitations of less than eighteen years was then in effect.

W. Va.Code § 48A–6–2(c) and (d) (emphasis provided).

 Our examination of the history of subsections (c) and (d) reinforces the belief that Chapter 48A, Article 6, (hereinafter "paternity statute") was enacted primarily to provide a means by which child support might be collected upon a finding of paternity.[3] The limitation of actions provisions contained in Article 6, Chapter 48A of the Code of West Virginia are applicable in cases brought under that statutory structure. However, that statutory structure is not the sole means available for the resolution of claims of a right to inheritance by children born out of wedlock.

### IV. Historical Analysis of Right of A Child Born Out of Wedlock to Inherit From Father

An examination of the evolution of the right of a child born out of wedlock to inherit from his or her parents reveals a determinative fact: such right derives not from the paternity statutes, but rather from relevant court decisions and the inheritance statutes. At common law, a child born out of wedlock had no right to inherit from either parent. *See Trimble v. Gordon,* 430 U.S. 762, 768, 97 S.Ct. 1459, 52 L.Ed.2d 31 (1977); *Stone v. Gulf American Fire and Casualty Co.,* 554 So.2d 346, 363 (Ala.1989), *cert. denied sub nom., Williams v. Stone,* 496 U.S. 943, 110 S.Ct. 3229, 110 L.Ed.2d 676 (1990). Statutes were gradually enacted throughout the country, as in the case of West Virginia Code

---

**2.** The revisions enlarged the time for instituting such actions to meet or exceed the federally recommended minimum of 18 years. These amendments were enacted before, but became effective after, *Shelby J.S.* was decided May 17, 1989, striking down the former ten-year limitation.

**3.** Clearly, a finding of paternity under Article 6, Chapter 48A may be used collaterally in appro-

priate cases and upon proper proof: (1) to give proper notice in an adoption proceeding, (2) to establish an entitlement to inheritance, or (3) for other purposes not at issue here. The question in the case before us is whether paternity may *only* be judicially determined within the context of a paternity proceeding under Chapter 48A, Article 6.

§ 42–1–5 (1923) (Repl.Vol.1997), recognizing the right of a child born out of wedlock to inherit from its mother. West Virginia Code § 42–1–5 provided as follows: "Bastards shall be capable of inheriting and transmitting inheritance on the part of their mother, as if lawfully begotten." In *Simpson v. State Compensation Commissioner*, 114 W.Va. 814, 174 S.E. 329 (1934), this Court explained that such statute had come to West Virginia through Virginia law and "established beyond question that the statute conferred upon an illegitimate the same legal kinship to his mother, uterine brothers and sisters, and other blood kindred through the mother, as if he were legitimate." *Id.* at 816–17, 174 S.E. at 330.

 On April 26, 1977, the United States Supreme Court concluded that an Illinois statute, similar to the West Virginia statute, violated the principle of equal protection by denying children born out of wedlock the intestacy rights in their fathers' estates otherwise provided to legitimate offspring. *Trimble*, 430 U.S. at 776, 97 S.Ct. 1459. Four years later, in *Adkins v. McEldowney*, 167 W.Va. 469, 280 S.E.2d 231 (1981), this Court observed: "Our Code, 42–1–5, restricts illegitimates' rights to a greater extent than the Illinois statute declared unconstitutional in *Trimble*, and so certainly the Supreme Court's rule forbids application of our statute." *Id.* at 471, 280 S.E.2d at 232–33. The *Adkins* Court then applied the "doctrine of neutral extension," to permit children born out of wedlock to inherit from both mother and father. *Id.* at 469, 280 S.E.2d at 232, syl. pt. 2. "Illegitimacy is a suspect classification

entitled to strict scrutiny by our Constitution, art. III, § 17, and thus W.Va.Code, 42–1–5, as written, restricting inheritance by an illegitimate child to inheritance from his or her mother, is unconstitutionally discriminatory." *Id.* at 469, 280 S.E.2d 231, 280 S.E.2d at 231, syl. pt. 1. In syllabus point three of *Adkins*, this Court explained:

Our legislature has manifested its intent to abrogate common law prohibitions against inheritance by ... [children born out of wedlock], and has given them rights of inheritance from and through their mothers. This, however, creates an impermissible discrimination that we, applying the doctrine of neutral extension, must remedy by requiring that Code, 42–1–5 be applied to permit ... [children born out of wedlock] to inherit from both mother and father.

167 W.Va. at 470, 280 S.E.2d at 232, syl. pt. 3.

Recognizing the absence of any statutory guidelines for the determination of rights of a child born out of wedlock to inherit from his father, the *Adkins* Court suggested that "[o]ur legislature may want to provide a statutory scheme compatible with our holding today, outlining how illegitimate children may prove entitlement to inherit from their fathers. Until such time as it does, trial courts must evaluate each cause on a case-by-case basis." 167 W.Va. at 473, 280 S.E.2d at 233.

Our legislature did not respond to this Court's invitation in *Adkins* until it enacted an amended version of West Virginia Code § 42–1–5 in 1999.[4] While that statute has no

---

4. West Virginia Code § 42–1–5 (1999) provides as follows:

(a) Children born out of wedlock shall be capable of inheriting and transmitting inheritance on the part of their mother and father.
(b) Prior to the death of the father, paternity shall be established by:
(1) Acknowledgment that he is the child's father;
(2) Adjudication on the merits pursuant to the provisions of section four, article six, chapter forty-eight-a of this code; or
(3) By order of a court of competent jurisdiction issued in another state.
(c) After the death of the father, paternity shall be established if, after a hearing on the merits, the court shall find, by clear and convincing

evidence that the man is the father of the child. The civil action shall be filed in the circuit court of the county where the administration of the decedent's estate has been filed or could be filed:
(1) Within six months of the date of the final order of the county commission admitting the decedent's will to probate or commencing intestate administration of the estate; or
(2) If none of the above apply, within six months from the date of decedent's death.
(d) Any putative child who at the time of the decedent's death is under the age of eighteen years, a convict or a mentally incapacitated person may file such civil action within six months after he or she becomes of age or the disability ceases.

applicability to the present case since the decedent died prior to its enactment, its integration into the inheritance schemes of the state is important to our analysis.[5] Prior to that 1999 statute, providing specific methodology and time limits for determining entitlement of a child born out of wedlock to inherit from the father, the applicable law was that provided by the *Adkins* Court: *"[T]rial courts must evaluate each cause on a case-by-case basis."* 167 W.Va. at 473, 280 S.E.2d at 233 (emphasis supplied).

■ We have additional guidance from a case decided by this Court after *Adkins*. In *Moore v. Goode,* 180 W.Va. 78, 375 S.E.2d 549 (1988), this Court had further opportunity to address the right of a child born out of wedlock to inherit from the father. In discussing the distinctions among paternity, divorce, and support statutes, this Court rejected an argument that the "determined father" definition contained in the adoption statute would apply to assist in the resolution of the inheritance issue. "We decline to hold that the legislature intended the determined father language in the adoption statute to be the means by which paternity is established

for purpose of intestate succession." *Id.* at 84, 375 S.E.2d at 555. The Court further observed that the "statutory distinctions" between a determined father and an unknown father "may have evolved in order to meet the due process and equal protection problems that can occur in adoption cases." *Id.*[6] In characterizing the nature of the civil action designed to enable inheritance from the father of a child born out of wedlock, the Court stated: "We recognize that this suit is not a paternity action because Isaac N. Morris [the putative father] is deceased."[7] *Id.*[8]

Finally, we are aided by a case heard by a Pennsylvania Superior Court. *In re Estate of Greenwood,* 402 Pa.Super. 536, 587 A.2d 749 (1991), *appeal denied,* 529 Pa. 634, 600 A.2d 953 (1991), addressed the rights of children born out of wedlock to establish paternity for inheritance purposes from one who has died prior to the institution of the proceeding, and the effect of statutes of limitation contained within a separate paternity establishment statute. The *Greenwood* court explained that "the 'right to inherit' in the case of intestacy is reserved exclusively to

---

(e) The provisions of this section do not apply where the putative child has been lawfully adopted by another man and stands to inherit property or assets through his adopted father.

(f) The provisions of this section do not apply where the father or putative father has expressly disinherited the child in a provision of his will.

5. We express no opinion regarding the constitutional sufficiency of the framework enunciated in that statute; nor do we imply that such statute should be consulted to determine the outcome of the present case. We note parenthetically that retroactive application of the 1999 statute would not be permitted. *See Morgan v. Mayes,* 170 W.Va. 687, 689, 296 S.E.2d 34, 36 (1982)("The basic rule established . . . [is] that the controlling statute is the one in effect at the date of death of the person through whom inheritance is claimed . . ."); *King v. Riffee,* 172 W.Va. 586, 590, 309 S.E.2d 85, 89 (1983) ("If we were now to hold that a statute on . . . [property distribution] not in force and effect at the time of the death of ancestors controls the descent of real property, long settled titles to real property might be called into question and opportunities presented for the making of great mischief.").

6. This Court addressed the separate offices of the adoption statute and the paternity statute again in *Chrystal R.M. v. Charlie A. L.,* 194 W.Va. 138,

459 S.E.2d 415 (1995), reasoning that the paternity section "is separate and distinct from the adoption section[,]" that "[t]hey serve two entirely different interests," and that "they are not considered to be in *pari materia.*" *Id.* at 141, 459 S.E.2d at 418. In syllabus point two of *Chrystal R. M.,* this Court explained: " 'Statutes relating to different subjects are not in pari materia. Syllabus point 5, *Commercial Credit Corp. v. Citizens National Bank,* 148 W.Va. 198, 133 S.E.2d 720 (1963).' Syllabus point 1, *Atchinson v. Erwin,* 172 W.Va. 8, 302 S.E.2d 78 (1983)."

7. We note that the 1999 legislative enactment of West Virginia Code § 42-1-5 also contemplates actions to establish inheritance rights after the death of the putative father.

8. We note that the civil action filed by the Appellant does not appear to satisfy the technical requirements for a filing under West Virginia Code § 48A-6-1(a) (1998) (Repl.Vol.1999)., which requires that an action under that article shall be initiated on a "verified complaint." The complaint in the record is not verified. This Court explained in *Foster v. Good Shepherd Interfaith Volunteer Caregivers, Inc.,* 202 W.Va. 81, 502 S.E.2d 178 (1998), that a verified complaint is more than a "mere allegation" and is rather a "statement sworn to before a notary." *Id.* at 85, 502 S.E.2d at 182.

Chapter 21 of the Probate, Estates and Fiduciaries Code...." 587 A.2d at 752. The Pennsylvania statutes did provide somewhat more distinct guidance, in the form of a statute explicitly permitting children born out of wedlock to inherit from their fathers [9] and a general assertion that "[e]xcept as herein otherwise provided, a person born out of wedlock shall have the same rights in an estate and shall be subject to such time limitations and to such procedures as are applied to any other heir or claimant against an estate." 20 Pa. Cons.Stat. Ann. 3538 (1978) (Supp.1990–91). However, the critical component of the *Greenwood* court's reasoning was its recognition that "the eighteen-year statute of limitations under Section 4343(b) [the Pennsylvania paternity statute in question] is inapposite to the case at bar and cannot be made applicable to Chapter 21 of the intestate succession statute." 587 A.2d at 752. As in the case of the West Virginia paternity regimen, the Pennsylvania paternity statutes were incorporated within the "Support Matters Generally" section of the Pennsylvania statutory structure. *Id.* The *Greenwood* court found this fact persuasive and explained that when the chapter in which the paternity statutes appear "is reviewed in its entirety, giving it a common sense interpretation, the thrust of the language is geared toward resolving the question attendant to 'a duty of support.'" *Id.* The court affirmed the lower court's holding subjecting a child born out of wedlock to the same time restraints as applied to other heirs or claimants of an estate and found as follows:

> From our scrutiny of the statute in question, there is no indication in the Probate, Estates and Fiduciaries Code, save for the time restraints for filing a claim with an estate before a final decree of distribution

is issued, that the Legislature intended to establish a barrier to an illegitimate's right to prove paternity beyond the purported father's lifetime so as to inherit by, from and through the decedent.

*Id.* at 752 n. 3; *see also Ellis v. Ellis,* 752 S.W.2d 781 (Ky.1988) (refusing to apply time limitation for support actions to inheritance determination).

## V. Inheritance Issue May Be Resolved By A Separate Action.

■ Accordingly, we hold that, with regard to establishing a right to inherit from a person who died before the 1999 amendment to West Virginia Code § 42–1–5 was effective, a prospective heir born out of wedlock may maintain an otherwise unobjectionable action without regard to the limitations on actions set forth in West Virginia Code § 48A–6–1 *et seq.* We perceive that the action brought by the Appellant here is in the nature of a declaratory judgment action, brought under that statute, or in the nature of a former action in equity, for which there is not other remedy at law, in order to establish and declare the Appellant's relationship to the decedent, if any, and the Appellant's right to inherit from the decedent, if any.[10]

■ Having based its resolution of this matter upon an inapplicable statute, the trial court did not reach the merits of the Appellee's argument of laches. This Court has consistently observed the rule of appellate review that we will refrain from addressing a nonjurisdictional issue that has not been determined by the lower court. *See Hartwell v. Marquez,* 201 W.Va. 433, 442, 498 S.E.2d 1, 10 (1997) (" 'It is a well established principle that this Court will not decide nonjurisdictional questions which have not been raised in the court below.' " (quoting *Stonebraker v.*

---

9. 20 Pa. Cons.Stat. Ann. 2107 (1978). That statute provided, in part, that a person born out of wedlock shall be considered the child of his father when clear and convincing evidence demonstrates that the man was truly the father of the child. The statute did not provide any time limitations with regard to the filing of a civil action thereunder.

10. With respect to the state's legitimate interest in avoiding stale claims, we note that the Legislature has now concurred in the advisability of

permitting such actions after the death of the putative father. With advances in DNA testing and verification, the argument that shorter statutes of limitations are necessary to avoid stale claims is less persuasive. As Justice O'Connor observed in *Clark v. Jeter,* 486 U.S. 456, 108 S.Ct. 1910, 100 L.Ed.2d 465 (1988), "scientific advances in blood testing ha[ve] alleviated some problems of proof in paternity actions." *Id.* at 463, 108 S.Ct. 1910.

*Zinn,* 169 W.Va. 259, 266, 286 S.E.2d 911, 915 (1982) (additional citations omitted))); Syl. pt. 3, *Voelker v. Frederick Business Properties Co.,* 195 W.Va. 246, 465 S.E.2d 246 (1995) (" ' "In the exercise of its appellate jurisdiction, this Court will not decide nonjurisdictional questions which were not considered and decided by the court from which the appeal has been taken." Syllabus Point 1, *Mowery v. Hitt,* 155 W.Va. 103[, 181 S.E.2d 334] (1971).' Syl. pt. 1, *Shackleford v. Catlett,* 161 W.Va. 568, 244 S.E.2d 327 (1978)").

## VI. Conclusion

We do not intend here to imply any suggested resolution of the dispute between the parties by the trial court. We direct the lower court, on remand, to address the various arguments of the parties on any relevant issues, as *Adkins* suggested, "on a case-by-case basis." 167 W.Va. at 473, 280 S.E.2d at 233. The Appellee's Motion for Judgment on the Pleadings, as well as her argument to this Court, included assertions that the Appellant's claim was also barred by the failure to process a claim before the Fiduciary Commissioner and County Commission and barred by the doctrine of laches. We note that the claims procedure for estates before the County Commission relates to creditor's claims and is not applicable to the dispute before us. We note further that consideration of the doctrine of laches was not appropriate here on the record before us. Upon the full development of the record below, the Circuit Court may give such consideration to the equitable doctrine of laches and its elastic standards as may be suitable in the circumstances.

Based upon the foregoing, we conclude that the lower court erred in applying limitation of actions provisions of the paternity statute to prohibit the cause of action asserted by the Appellant. Limitations provisions included within the paternity statute are inapplicable to a civil action by a child born out of wedlock seeking to inherit from his or her father brought under West Virginia Code § 42–1–5, as interpreted in *Adkins.* Prior to the 1999 amendment to West Virginia Code § 42–1–5, the Legislature had not provided a methodology for the evaluation of a child born out of wedlock's assertion of the right to inherit from his or her father. Where that 1999 statute is not applicable, resolution of the cause of action is to be based upon case-by-case analysis, consistent with the holding of *Adkins.* Based upon these conclusions, we remand this matter to the lower court for further proceedings consistent with this opinion.

Reversed and Remanded With Directions.