584 S.E.2d 502

**Terry RYAN, Plaintiff Below, Appellee,**

v.

**Renee L. RICKMAN, Administrator of the Estate of Van C. Culp, deceased, Defendant Below, Appellant.**

No. 30897.

Supreme Court of Appeals of West Virginia.

Submitted May 13, 2003.

Decided June 19, 2003.

Michael L. Solomon, Esq., Solomon & Solomon, Morgantown, for Appellee.

Ray A. Byrd, Esq., Thomas B. Miller, Esq., Schrader, Byrd & Companion, Wheeling, for Appellant.

PER CURIAM.

This is an appeal from the Circuit Court of Monongalia County of a motion for summary judgment in which the Circuit Court ruled against the appellant, the administratrix of the estate of a deceased person.

For the reasons set forth below, we affirm the action of the lower court.

## I.

This action was commenced when the appellee, Terry Ryan, filed a complaint on April 3, 1998, in the Circuit Court of Monongalia County. The appellee requested a declaratory judgment finding that the appellee is an heir of Van C. Culp, who died intestate on September 17, 1997, in Monongalia County; and that the appellee is entitled to an intestate share of Mr. Culp's estate. Specifically, the appellee alleged that Van C. Culp was the appellee's biological father.

The appellant, Renee L. Rickman, is the decedent's daughter and heir, and is also the administratrix of the decedent's estate (Mr. Culp's wife predeceased him). The appellant filed a timely answer denying the material allegations of the appellee's complaint and setting forth the affirmative defenses of laches, waiver and estoppel. The appellant also asserted that the appellee's claim for a declaratory judgment was procedurally improper, and she demanded a jury trial on the factual issues.

Following the commencement of this action, a pervading issue became the question of whether DNA testing should be performed to assist in determining whether the appellee is in fact the biological son of the decedent, and if such testing should be performed, in what manner the testing should be conducted. The circuit court ruled that it would be appropriate to allow an alternative form of DNA testing whereby a sample of the saliva (skin cells) from the inside of the appellant's mouth could be tested to determine whether

the appellant's father, Mr. Culp, was also the appellee's biological father.

Following the submission of results from the DNA testing, the appellee filed a motion for summary judgment, alleging that no genuine issues of material fact remained and that he was entitled to judgment as a matter of law. The appellant filed a response contending that summary judgment was not appropriate because there were genuine issues of fact remaining. The circuit court ruled for the appellee on the motion for summary judgment, and this appeal followed.

## II.

■ "Summary judgment is proper only if, in the context of the motion and any opposition to it, no genuine issue of material fact exists and the movant demonstrates entitlement to judgment as a matter of law." Syllabus Point 2, in part, *Gentry v. Mangum,* 195 W.Va. 512, 466 S.E.2d 171 (1995).

■ In his motion for summary judgment, the appellee contended, in light of the evidence in the record, and particularly the DNA test results, that there were no remaining genuine factual questions and that he was entitled to his requested relief as a matter of law. Specifically, the appellee contended that he was entitled as a matter of law to an order by the court pursuant to *W.Va.Code,* 55-13-4 [1941] declaring that he is the biological son and heir of Mr. Culp.[1]

In her response to the summary judgment motion, the appellant contended that genuine issues of fact still remained. Moreover, the appellant claimed, even if the DNA results were factually conclusive in this matter, the doctrines of laches and equitable estoppel bar the appellee from receiving his requested relief.

The circuit court concluded that the appellee had presented overwhelming evidence that left no genuine issue of material fact as to whether Mr. Culp was the appellee's bio-

logical father. The most persuasive evidence, the court held, was the DNA report that showed that there was a 98.9% probability of siblingship between the appellant and appellee, or 92–1 odds favoring the appellee being Mr. Culp's biological son.[2] Furthermore, the appellee's biological mother testified in a deposition that Mr. Culp was the appellee's father and the appellee produced a baptismal certificate that indicated Mr. Culp was the appellees's father. The appellee testified in a deposition that he had been told as a child that a "Mr. Culp," whom the appellee's mother had never married, was the appellee's father. The appellee also testified (and his statement in this regard has not been challenged) that he had believed for most of his life that his biological father had died when the appellee was a child; and that the appellee had learned of Mr. Culp's specific identity and recent date of death only when the appellee asked a relative when his father had died, and was told that it had been shortly before the appellee's inquiry.

In sum, the appellant presented no evidence or argument in support of her opposition to the appellee's motion that could controvert or impeach the appellee's claim, based on substantial evidence, that Mr. Culp was in fact the appellee's biological father. Therefore, as to the central factual issue in this case—whether or not Mr. Culp was the appellee's biological father—the circuit court found that there was no genuine issue of material fact; and we agree.

The only issue remaining before the circuit court, therefore, was whether the appellee's request that he be declared an heir at law could be barred by the equitable defenses of laches, waiver, or estoppel. The appellant on this point contended that the fact that the appellee did not "come forward" and "identify himself" to Mr. Culp sometime during Mr. Culp's lifetime would support applying the defenses of laches, waiver, and/or estoppel to

---

1. *W.Va.Code,* 55-13-4 [1941] states, in part:
   Any person interested as . . . an . . . heir . . . in the administration of . . . the estate of a decedent . . . may have a declaration of rights or legal relations in respect thereto:
   (a) To ascertain any class of creditors, devisees, legatees, heirs, next of kin or others . . . .

2. The scientific reliability of DNA evidence has been well-established by this Court for years. *See, e.g.,* Syllabus Point 3, *State v. Woodall,* 182 W.Va. 15, 385 S.E.2d at 256 (1989).

bar the appellee from obtaining his requested relief.

■ The equitable defense of laches is described clearly and succinctly in *Province v. Province,* 196 W.Va. 473, 473 S.E.2d 894 (1996). In that opinion, Justice Cleckley explained:

> The elements of laches consist of (1) unreasonable delay and (2) prejudice. *See State Dept. of Health and Human Resources, Child Advocate Office on Behalf of Robert Michael B. v. Robert Morris N.,* 195 W.Va. 759, 466 S.E.2d 827 (1995). Specifically, the Court stated:
>
> > "Mere delay will not bar relief in equity on the ground of laches. 'Laches is a delay in the assertion of a known right which works to the disadvantage of another, or such delay as will warrant the presumption that the party has waived his right." ' Syllabus Point 2, *Bank of Marlinton v. McLaughlin,* 123 W.Va. 608, 17 S.E.2d 213 (1941).
>
> Even though a finding of laches rests primarily within the discretion of the special commissioner and the circuit court, we will not approve such finding if the party asserting the defense fails to prove prejudice. The burden of proving unreasonable delay and prejudice is upon the litigant seeking relief. No rigid rule can be laid down as to what delay will constitute prejudice; every claim must depend upon its own circumstances. To be clear, the plea of laches cannot be sustained unless facts are alleged to show prejudice to the opposing party, or that the ascertainment of the truth is made more difficult by the delay in seeking immediate relief.

196 W.Va. at 483–484, 473 S.E.2d at 904–905.

Furthermore, in *Banker v. Banker,* 196 W.Va. 535, 474 S.E.2d 465 (1996), this Court clarified:

> For laches to apply, the circuit court must consider the circumstances surrounding the delay and any disadvantage and prejudice to the other party caused by the delay. [Citation omitted]. Prejudice here is strictly confined to the issue of evidence: Has the length of the delay caused critical or dispositive evidence to be lost, destroyed, or otherwise made unavailable?

196 W.Va. at 547, 474 S.E.2d at 477.

The circuit court reasoned that while it might be true that the appellee knew that a man named "Mr. Culp" was the appellee's father before Mr. Van C. Culp passed away, the fact that the appellee did not "come forward" to locate and inform Mr. Van C. Culp that the appellee was Mr. Culp's son during Mr. Culp's lifetime did not and could not mean that the plaintiff "sat on" or "delayed the assertion of" a known legal right.

The circuit court reasoned that until Mr. Culp passed away, the appellee had no legal right or interest in any of Mr. Culp's assets; and that the appellee only had a known legal right—to assert a claim against Mr. Culp's estate—once Mr. Culp had died. After Mr. Culp died, the plaintiff timely filed a suit, asserting that he had an interest in the estate. Because the undisputed evidence showed that the plaintiff did not unduly delay the assertion of (or in the case of waiver, abandon) a "known legal right," the circuit court concluded that the defendant could not assert laches or waiver as a defense.

■ The circuit court also held that the appellant did not present any evidence which would allow her to assert the equitable defense of estoppel. The elements of the equitable defense of estoppel are set forth in *Hunter v. Christian,* 191 W.Va. 390, 446 S.E.2d 177 (1994), in Syllabus Point 2, which reads:

> "The general rule governing the doctrine of equitable estoppel is that in order to constitute equitable estoppel or estoppel in pais there must exist a false representation or a concealment of material facts; it must have been made with knowledge, actual or constructive of the facts; the party to whom it was made must have been without knowledge or the means of knowledge of the real facts; it must have been made with the intention that it should be acted on; and the party to whom it was made must have relied on or acted on it to his prejudice." Syl. pt. 6, *Stuart v. Lake Washington Realty Corp.,* 141 W.Va. 627, 92 S.E.2d 891 (1956).

The circuit court concluded that the appellant had presented no evidence that the appellee had made any sort of misrepresentation toward the appellant or toward Mr. Culp, which would allow the finding of an estoppel; and that the appellant had presented no evidence that the decedent, as a result of the appellee having never "come forward" to notify him that the appellee was his son, was thereby prejudiced.

For these reasons, the circuit court ordered that the appellee, as a son of the decedent, is a legal heir of the decedent, and is entitled to an intestate share of the decedent's estate, as provided by *W.Va.Code*, 42–1–3a [1992].

### III.

■ We believe that the circuit court's order was legally sound for the reasons stated therein. The only issue that was not squarely addressed by the circuit court was the appellant's argument that Mr. Ryan had wrongfully "concealed" his existence from Mr. Culp, thereby giving rise to the defense of estoppel.

But the appellant did not produce any evidence tending to show such a concealment, wrongful or otherwise. The appellee gave deposition testimony that he had believed, from some remarks he overheard when he was a boy, that his biological father—who he believed to be named "Culp"—had probably died when the appellee was a boy. The appellant did not challenge the substance of this testimony, directly or indirectly. The deposition evidence also tended to show that while other members of the appellee's family, including his grandparents and his mother's later husband, knew that Mr. Van C. Culp was the appellee's father, this fact was not a topic of conversation in the appellee's presence. The appellee's mother testified that she had written Mr. Van C. Culp when she was pregnant, and told him that he had fathered a child with her, but she said she got no response. Nothing was presented in response to the summary judgment motion to impeach or contradict this evidence.

It would, we conclude, in these circumstances, be improper to allow a jury to decide whether the appellee knowingly concealed his existence and identity from Mr. Culp in order to protect the possibility of an inheritance by the appellee; and that Mr. Culp, because of the appellee's concealment and wholly ignorant of the appellee's existence, chose to die intestate instead of making a will naming his daughter as his sole heir.

Moreover, as the circuit court noted, it also would be improper to allow a jury to speculate that Mr. Culp would have chosen to affirmatively disinherit his son, if the appellee had "sought out" Mr. Culp while he was alive. To presume prejudice to Mr. Culp in this situation would be contrary to the strong tendency of the law to favor parents acknowledging and supporting their children.

In summary, while it might be possible to construct a hypothetical situation where a biological child could be seen as estopped from asserting otherwise valid rights of inheritance—because of clearly proven, egregious, inequitable, and intentional misconduct toward a decedent that clearly fostered an unfair and detrimental reliance by the decedent—there was no evidence of such a situation in the instant case.

We are not unmindful of the difficulty and pain for all concerned posed by the situation in the instant case. Many competing equities arise in such situations. In order to have reasonably predictable rules of inheritance, the laws of intestate succession cannot be bent to permit inheritance decisions to be based on the vagaries of how a jury views the equities *post hoc.*

Finally, we are not without legislative guidance in this area. Our Legislature has specifically recognized that children may "come forward" after a death and have their paternity established for purposes of inheritance. The 1999 amendments to *W.Va.Code*, 42–1–5 set forth a six-month statute of limitations for establishing paternity after the death of a father. However, we held in Syllabus Point 7 of *Taylor v. Hoffman,* 209 W.Va. 172, 544 S.E.2d 387 (2001) that this period of limitations was not retroactive, and a case-by-case analysis should be applied to cases filed before the 1999 amendment. This case was filed in 1998. The seven-month period that passed before the appellee filed

his claim is not unreasonable, and there was no prejudice to the appellant.

#### IV.

For the foregoing reasons, the judgment of the circuit court is affirmed.

Affirmed.